In re SCHAEFER.

(District Court, N. D. Ohio, W. D. December 2, 1910.)

No. 1,573.

1. INSURANCE (§ 146*)—LIFE INSURANCE—"POLICY."
The word "policy," in a life policy provision for payment to a beneficiary of a stated sum on insured's death during continuance of the policy, refers to the insurance contract.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 146.*

For other definitions, see Words and Phrases, vol. 6, pp. 5440-5442.]

2. BANKRUPTCY (§ 143*)—ASSETS—LIFE POLICY.
A paid-up policy insuring bankrupt's life, under agreement to pay him an annuity for life after 20 years, which have not expired, and to pay his widow a fixed sum on his death, vests in his trustee in bankruptcy

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

only as to the bankrupt's interest in the annuity and not as to the entire present value of the policy, under Bankr. Act July 1, 1898, c. 541, § 70a (5), 30 Stat. 566 (U. S. Comp. St. 1901, p. 3451), vesting in the trustee title to property which the bankrupt might have transferred; though the policy reserves an option to the bankrupt to surrender it at the end of the 20-year term.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 143.*]

In the matter of Joseph N. Schaefer, bankrupt. On petition to review a finding by the referee. Affirmed.

A. G. Fuller, for trustee.
John Sheridan, for bankrupt.

KILLITS, District Judge. This matter is before the court upon a petition for review of the finding of Hon. N. W. Bright, referee in bankruptcy for Hancock county, adjusting the rights of parties claiming an interest in a policy of insurance held by the bankrupt. The policy was issued on the 23d of November, 1897, and reads as follows:

"In consideration of the application for this policy, which is hereby made a part of this contract, the Mutual Life Insurance Company, of New York, promises to pay at its home office in the city of New York, unto Joseph N. Schaefer, of Findlay, in the county of Hancock, state of Ohio, an annuity for every year after twenty years from the date hereof during the remaining lifetime of the said Joseph N. Schaefer in equal annual payments of $60.00 each, commencing the 23rd day of November in the year one thousand nine hundred and eighteen and terminating with the last annual payment preceding death; and likewise promises to pay unto his wife, Mary E. Schaefer, her executors, administrators or assigns, one thousand dollars upon acceptance of satisfactory proofs at its home office of the death of said Joseph N. Schaefer during the continuance of this policy, upon the following condition and subject to the provisions, requirements and benefits stated on the back of this policy which are hereby referred to and made a part hereof."

Then follow the provisions for the payment of the ten full premiums, and the customary provisions as to dividends, paid-up policy, surrender, and incontestability. The policy provides that it is to be credited with its distributive share of surplus apportioned at the expiration of 20 years, when it shall be treated as a tontine policy of that time of distribution, and that the surplus may be applied at the end of such period to purchase an increased annuity or may be drawn in cash, and that thereafter the distribution period shall be in terms of five years each during the continuance of the policy; surplus to be applied to the purchase of additional insurance without medical examination. The policy also provides as to surrender that at the end of the first period of 20 years the sum of $1,211.80 and the surplus will be paid therefor in cash. Attached to the policy, in apparent explanation of the privileges under it, is a sheet entitled, "Adapted Illustrations Special Income Life Policy," computed for the principal sum, term and premium of the policy in question, from which it would appear that there is any one of six options available at the end of 20 years. This policy was fully paid up before proceedings in bankruptcy against Schaefer were instituted, and no question arises that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

such payments were in any respect in .fraud of creditors, and the court is left to determine the rights of the trustee therein without the assistance of any evidence except the policy itself and its terms. The referee found that "only the annuity provided for in said policy and payable to said Joseph N. Schaefer should become assets in the hands of the said trustee," and ordered "that said Joseph N. Schaefer make and deliver to said trustee a proper assignment of all his interest in and to such annuity within ten days from the date of this entry."

The court is called upon to apply to the terms of this policy section 6 of the bankruptcy act: "This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition"— and classification (5) of paragraph "a" of section 70 of the bankruptcy act, vesting in the trustee the title of the bankrupt in "property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

Counsel for the trustee insist that by the terms of this policy the wife of the insured has no present interest therein, and that the entire present value of the policy is subject to the disposition of the trustee for the benefit of creditors. In taking this position, it is quite plain, from the citation of his authorities, if not otherwise, that trustee's counsel has failed to apprehend the significance of the language of the policy on the face thereof. He depends upon two cases particularly: In re Slingoff (D. C.) 106 Fed. 154, and In re Steel (D. C.) 98 Fed. 78; and also cites In re Diack (D. C.) 100 Fed. 770, and In re Boardman (D. C.) 103 Fed. 783. These authorities do not enlighten the court, for the reason that, as distinguished from the policy before us, they were respectively based upon pure endowment policies. In each case the policy provided that at the expiration of a certain time a fixed sum should be paid to the insured, but that in case he died before the arrival of that time the face of the policy should be paid to the wife. In this case there are two contracts in the policy, not in the alternative as in the case of an endowment policy, but separate and distinct provisions. The first is the contract with Schaefer that if he survives for more than 20 years from the date of the policy, during the remainder of his life he shall receive an annuity of $60. Then the language of the contract proceeds, "and likewise promises to pay unto his wife * * * one thousand dollars upon acceptance of satisfactory proofs at its home office of the death of the said Joseph N. Schaefer during the continuance of this policy." Plainly, the effect of this language is that no matter when Joseph N. Schaefer dies, whether within the period extending for 20 years after the date of the policy or thereafter, his wife, or her representatives, shall receive $1,000. The language of the policy is that this right in Mrs. Schaefer shall exist during the continuance of the policy.

[1] Now, the term "policy" means nothing more than contract here, and the effect of it is that Mrs. Schaefer's interest is a vested one until the contract is terminated, either by the death of the insured, or by the exercise of some option, which by the very terms of the policy cannot be entertained by either the insured or Mrs. Schaefer, or both of them, until on or after the 23d of November, 1917.

[2] The policy, then, is one which is clearly distinguishable from those which counsel for the trustee cites as authorities. It is more like that under consideration in the case of In re Welling, 113 Fed. 189, 51 C. C. A. 151. That case was decided in Illinois, whose law does not "exempt policies of insurance from judicial pursuit by creditors." In Ohio, however (sections 9393, 9394, and 9398, General Code [sections 3628, 3629, R. S.]), policies of insurance for the benefit of a wife although paid for by the husband are exempt from any claims of the husband's creditors.

This court can do no better than to adopt as its own the reasoning of the dissenting opinion by Judge Grosscup, on page 195 of 113 Fed., on page 157 of 51 C. C. A., in the case of In re Welling, supra, bearing in mind that no option may be exercised by the insured, Schaefer, under the policy at bar, until November 23, 1917, and assuming that at that time he, without the consent of the beneficiary, his wife, may exercise one of the six options set out in the rider to the policy (and it is by no means clear that he may do that without his wife's consent), and upon the assumption, which we think is compelled by the terms of this policy, that until that period, at least, Mrs. Schaefer has a vested interest in the policy, the reasoning of Judge Grosscup in this dissenting opinion, found on pages 196 and 197 of the report in the Welling Case, found in 113 Fed., pages 158 and 159, 51 C. C. A., seems to us to control this situation. Speaking of the date when only the options could be exercised by the husband, Judge Grosscup said:

"One of the terms is that it shall be exercised November 27, 1906. Time, here, so far as Mrs. Welling is concerned, is of the essence of the option. The interest of the wife, and the sense of obligation of the husband may be different on that day from that of any day preceding or following. It is, in my judgment, the wife's right that the election, affecting as it does her vital interests, shall be exercised only in view of the consideration that may influence the husband at that time; neither those before nor those after.

"Another term of the option is that the election shall be by the husband himself. No one else can stand in his place, or exercise the option under the circumstances and sense of obligation that will influence him. It is the wife's right·to have the husband's judgment, not that of a stranger, the judgment of the man who presumably has an interest in her future, not that of a man whose interest in this respect is in conflict with hers. I am of the opinion that a fair interpretation of the spirit of the policy would disallow the exercise of the option of Welling until the day for its exercise had arrived, and would then disallow its exercise, unless it be by the judgment of Welling himself. Such an interpretation, of course, forbids the view that the option is transferable in advance, in this case six years in advance, or was subject to levy by creditors."

If we assume that the trustee's contention is correct, we must find that there is something in this policy independent of the provisions

for an annuity to Mr. Schaefer, and found in that portion of the policy which provides an interest for Mrs. Schaefer, which belongs to Schaefer and which ordinarily might be levied upon and sold under judicial process against him. And finding this right in Schaefer, there is no escape from the position that it is inconsistent and in conflict with the rights of Mrs. Schaefer, and, consequently, within the exemptions of the Ohio statutes just referred to. Schaefer's annuity has been paid for. That is a matter of value which he could have assigned, subject to the contingency of his death within the next seven years. Notwithstanding that, however, it has a present value. As the referee found, this unquestionably goes to his creditors for whatever it is worth.

We are very clear, also, that the referee was right in holding that the trustee had no interest in that portion of the policy which insured Schaefer's life for the benefit of his wife. The court finds among the papers in this case (apparently, not a part of the evidence) a letter from the company which is entirely in line with the court's interpretation of this policy. Its material parts are as follows:

"The insured could not surrender the policy for its cash value without the consent of the beneficiary; nor could he assign or transfer the policy without the beneficiary's consent; nor could the insured at or before the end of the twenty years change the status of the policy, under any of its conditions, without said beneficiary's consent. But the insured could surrender his rights in the annuity without disturbing the benefits provided in favor of his wife."

The things contended for by the trustee involve action independent of the consent of Mrs. Schaefer, and are in direct conflict with the interpretation of the policy placed upon it by the insurer, which is, we think, the only one of which the policy is fairly susceptible.

The finding of the referee in this matter is affirmed and made the order of the court.