In re CHURCHILL.

CHURCHILL et al. v. BESTUL.

(Circuit Court of Appeals, Seventh Circuit. October 7, 1913.)

No. 1,955.

1. BANKRUPTCY (§ 396*)—EXEMPTIONS—LIFE POLICY—RIGHT OF BENEFICIARY.
   Where a life insurance policy was payable, in case of insured's death, to his wife, or if the insured was living at the end of 20 years he might elect to receive certain specified valuable benefits, insured, on becoming a bankrupt before the end of such period, was without right or power either to deprive his wife of the life insurance provision then existing in her

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

favor or to obtain any benefits thereunder by surrender or by other arrangements to which she did not expressly assent.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 659–668; Dec. Dig. § 396.*]

2. BANKRUPTCY (§ 396*)—LIFE POLICY—RIGHT OF BENEFICIARY.

Where a life insurance policy insured a husband for the benefit of his wife, her rights as beneficiary are exempt from interference or control by him, both under the general law and by St. Wis. 1898, § 2347.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 659–668: Dec. Dig. § 396.*]

3. BANKRUPTCY (§ 143*)—LIFE INSURANCE POLICY—RIGHTS OF TRUSTEE.

Bankr. Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), vests in the bankrupt's trustee property which prior to filing of the petition the bankrupt by any means could have transferred, or which might have been levied on and sold under judicial process against him, provided that when any bankrupt shall have any insurance policy, which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within 30 days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so stated and continue to carry the policy. *Held*, that such section only applied to policies held by the bankrupt which have a cash surrender value, and hence where a policy on the bankrupt's life was payable to his wife on death before the end of 20 years, but had no surrender value when insured was adjudged a bankrupt prior to the end of such period, the fact that it also provided certain valuable optional benefits, which the bankrupt might avail himself of in case he survived the period, did not confer on the bankrupt's trustee any rights in the policy under such section.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224; Dec. Dig. § 143.*]

Petition to Review and Revise Order of the District Court of the United States for the Eastern District of Wisconsin; Ferdinand A. Geiger, Judge.

Bankruptcy proceedings of Charles Churchill. On petition by the bankrupt and his wife to review and revise in matters of law an order (198 Fed. 711) adjudging rights in favor of R. J. Bestul, the bankrupt's trustee, under an insurance policy on the life of the bankrupt. Order reversed, with directions.

This is a petition by the bankrupt and his wife for review and revision of an order in bankruptcy of the United States District Court for the Eastern District of Wisconsin, adjudicating rights in favor of the trustee under an insurance policy upon the life of the bankrupt.

The instrument in controversy is written by New York Life Insurance Company, bearing date December 20, 1892, and is variously named therein "insurance policy," "guaranteed interest bond," and "bond policy." It provides for annual premiums of $189.80 to be paid "every year until ten full years' premium shall have been paid;" and thereupon the insurance company "promises and agrees" on the face of the policy:

"First. That upon receipt and approval of proofs of the death, during the continuance of this bond policy, of Charles Churchill of Waupaca, county of Waupaca, state of Wisconsin (hereinafter called the insured), it will pay the amount of two thousand dollars, at its office in the city of New York, to Ann E., wife of the insured, or, in the event of her prior death, to the insured's executors, administrators or assigns.

"Second. That if this bond policy shall become payable in consequence of such death, occurring before the eighth day of December, nineteen hundred and twelve, and if the total amount of annual premiums paid, with interest

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

compounded at the rate of four per cent. per annum from the date of each payment to the date of death, shall exceed the face amount of the bond policy, the company will pay the amount of the difference between the face of the bond policy and the said amount so computed, as a mortuary dividend.

"The benefits, provisions and requirements, placed by the company on the back hereof, are a part of this contract, as fully as if recited over the signature hereto affixed."

The provisions referred to "on the back" of the policy, in so far as involved in the controversy, read as follows:

"Optional Benefits.

"If the insured is living on the 8th day of December in the year nineteen hundred and twelve, and if this bond policy is then in force, the premiums having been paid in full to that date, the insured shall be entitled to one of the following benefits:

"1. The continuance of this bond policy, which then becomes a paid-up insurance, payable at the death of the insured: Together with an annual income during the life of the insured of eighty dollars and ...... cents per annum (being equal to four per cent. of the total amount of annual premiums paid), the first payment of said income to be made to the said insured, if living, on the 8th day of December, nineteen hundred and thirteen, and an equal payment to be made annually thereafter, provided the said insured shall be living when such annual payment becomes due; and, in addition, the conversion of the surplus then apportioned by the company to this bond policy into a life annuity, payable together with the income above guaranteed.

"2. The continuance of this bond policy, guaranteeing a paid-up insurance and an annual income as specified in benefit '1,' and the withdrawal in cash of the above-defined surplus.

"3. The surrender of the bond policy to the company for its cash value, which is hereby guaranteed shall not be less than two thousand dollars, and which shall in addition to that amount include the above-defined surplus.

"4. The surrender of this bond policy, and the conversion of its cash value, as above defined, into an annual income during the life of the insured, payable in like manner as provided in benefit '1,' it being guaranteed that the annual amount of such income shall not be less than two hundred and forty-nine dollars and ten cents.

"Provided, however, that the insured shall notify the company, in writing, not less than three months before the first-named date above, which privilege is selected, and that in default of such notice, benefit '1' shall be considered selected.

"Dividends.

"No dividends of surplus shall be allowed or paid upon this bond policy prior to the date specified above, at which it becomes entitled to one of the above benefits. If this bond policy is continued under benefit '1,' or '2,' it shall participate annually thereafter in any dividend declared by the company on its paid-up policies, and the cash value allowed for any such dividends shall be payable together with the income payments hereinabove provided for."

On September 15, 1910, the insured, Charles Churchill, was adjudged a bankrupt, on his voluntary petition, all premiums on the above-mentioned policy having been paid up in conformity with its terms. Subsequently the bankrupt joined with his wife in a petition thereunder, for exemption of the above-mentioned policy from any claim asserted by the trustee in bankruptcy and to have established in such petitioners "all right, title and interest" therein. On hearing thereof, the referee ruled against the petitioners, in substance: That the trustee in bankruptcy was entitled thereto; that the policy had a cash surrender value of $1,860, at the date of the bankruptcy adjudication; that unless such amount was paid by the bankrupt to the trustee within 30 days, the policy must be delivered over to the trustee for the benefit of the estate. The order made by the referee accordingly was affirmed by the District Court, on certification of the proceedings for review. 198 Fed. 711.

Peter Fisher, of Kenosha, Wis., for petitioners.

Lloyd D. Smith, of Waupaca, Wis., for respondent.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). In the bankruptcy proceeding below, the bankrupt and his wife claimed all benefits provided under the life insurance policy in controversy, free from property rights therein asserted on the part of the trustee in bankruptcy. Their petition to that end was denied by the District Court, through an adjudication (in effect) that the estate in bankruptcy was entitled to all the benefits of such policy, unless the bankrupt paid over to the trustee, within 30 days, the sum of $1,860, stated in the order as "the cash surrender value of said insurance policy." Review and revision of such order is sought by the petitioners, under their original petition before this court, the trustee's answer, and the certified record.

The issue of law thus presented is whether the provisions of the Bankruptcy Act authorize the ruling below that the trustee became entitled to the benefits of the policy in evidence. However difficult of solution that inquiry may be, it is not only free from complications of fact, but it neither appears nor is asserted that any terms of the policy applicable to the issue are uncertain in their meaning.

The policy was issued to Charles Churchill, as the insured, in 1892. It required all the premiums to be paid during the first ten years ensuing, and they were so paid, making the contract one of "paid-up insurance" long prior to September 15, 1910, the date of adjudication of the insured as a bankrupt. Its provisions which were operative at the last-mentioned date and at all times up to December 8, 1912, were those contained on the face of the policy, whereby his wife, then living, was made sole beneficiary in the event of death of the insured; and while its subsequent terms, made operative only after the expiration of twenty years from its date—to be considered later—provide optional benefits in favor of the bankrupt, which include surrender of the policy 'for its cash value" as one of the options, it is both obvious from examination of the entire policy and conceded by the parties, that neither surrender by the insured nor cash surrender value thereof, at any period prior to December 8, 1912, was provided by the contract terms. At the stage, therefore, when bankruptcy intervened, the wife was made the sole beneficiary, throughout the above-mentioned period, of the life insurance secured by the policy. Its subsequent provisions, however, confer in substance the following "optional benefits" in favor of the insured, if "living on the 8th of December," 1912, namely: (1) Continuance of the policy as "a paid-up insurance, payable at the death of the insured," together with an annual income of $80 during his life, and further conversion of the surplus apportioned to the policy "into a life annuity." (2) Continuance of the policy, "guaranteeing a paid-up insurance and an annual income" as above specified, and "withdrawal in cash of the above-defined surplus." (3) Surrender of the policy "for its cash value," to be not less than $2,000 and in addition thereto "include the above-defined surplus." (4) Surrender of the policy and conversion of its cash value "into an annual income during the life of the insured," payable as described, to be not less than $249.10. The insured is required to give written notice to the company "not less than three months" prior to the above date "which privilege is selected," and in default thereof "benefit 1 shall be considered selected." No "dividends

of surplus shall be allowed or paid" on the policy, prior to the date "at which it becomes entitled to one of the above benefits." If the policy is continued under benefits 1 or 2, "it shall participate annually thereafter in any dividend declared"ᵢ on paid-up policies, to be paid with the income payments.

[1] Valuable benefits are thus secured in favor of the bankrupt, contingent on his surviving the 20-year period; but we are of opinion that the bankrupt was without right or power, when the adjudication of bankruptcy occurred, either to deprive his wife of the life insurance provision then existing in her favor, or to obtain any benefits thereunder, through surrender or other arrangement not expressly authorized by the wife.

[2] In reference to such interest of the wife, the law is well settled that her rights as beneficiary of life insurance are exempt from interference or control on the part of the insured husband—both under the general rule (Central Bank of Washington v. Hume, 128 U. S. 195, 203, 206, 9 Sup. Ct. 41, 32 L. Ed. 370), and pursuant to the Wisconsin Statute (section 2347, Wis. Stat. 1898) applicable thereto.

[3] Thus the issue is presented whether the above-mentioned prospective "optional benefits" in favor of the bankrupt constitute property which passes to the trustee within the meaning of the Bankruptcy Act. It arises irrespective of the alleged error in overruling the petitioners' contention that all benefits under the policy were exempt by the statutes of Wisconsin (Wis. Stat. 1898, subdiv. 19, § 2982, and section 2347) from claim on the part of creditors—an issue discussed in the opinion below and in the arguments of counsel herein, which may not be free from difficulty, under the Wisconsin authorities called to attention, whenever its solution becomes needful.

The order of the referee, on the hearing before him, appears to treat the policy as falling within the proviso of section 70a of the Bankruptcy Act, as an insurance policy held by the bankrupt "which has a cash surrender value payable to himself, his estate or personal representatives." It undertakes to ascertain and fix such value, at the date of adjudication in bankruptcy, to be $1,860, and that the "insurance policy belonged to and should be taken possession of by" the trustee in bankruptcy, unless the bankrupt paid to him "the cash surrender value" thereof thus stated. We understand, however, from the opinion filed by the District Judge, that this view was disapproved, and that the ruling against the petitioners, on the issue under consideration, rested on the proposition that the policy, having no cash surrender value, must nevertheless "be treated as property of the bankrupt passing to the trustee." In other words, that the trustee derives title under the terms of section 70a immediately preceding the proviso, which reads:

"Property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him."

We are impressed with no doubt that the ruling of the referee was erroneous in its application of the above-mentioned proviso to this policy. Not only was surrender thereof by the bankrupt unauthorized

and no cash surrender value provided by the policy terms, when bankruptcy intervened, but the letter on the part of the insurance company, which appears to have been accepted as proof of such authorization and surrender value, was plainly without force to that end, if assumed to be admissible for any purpose. It merely purports to state the view of the "Actuary's Department" that "if the company had allowed a cash surrender value for this policy on September 15, 1910, the amount of such cash value would have been $1,860," without even an intimation that any sum was then available to the bankrupt under rule or custom of the insurer. Moreover, another letter on the part of the company (also in the record) expressly states:

"The company does not pay a cash surrender or loan value for any of its policies except for such policies as provide for those values."

Thus the order must be predicated alone on the further contention above mentioned that the policy, having no cash surrender value in favor of the bankrupt, passes to the trustee under the general clause of the act referred to.

Is that interpretation tenable, in the light of the recent decisions of the Supreme Court, in three cases—Burlingham et al., Trustees, v. Crouse, 228 U. S. 459, 33 Sup. Ct. 564, 57 L. Ed. 920; Everett, Trustee, v. Judson, 228 U. S. 474, 33 Sup. Ct. 568, 57 L. Ed. 927; Andrews v. Partridge, Trustee, 228 U. S. 479, 33 Sup. Ct. 570, 57 L. Ed. 929— handed down April 28, 1913? That sanction appeared therefor in the line of authorities cited in the opinion below—including the pertinent opinion of this court, speaking through Judge Jenkins, in Re Welling, 113 Fed. 189, 191, 51 C. C. A. 151—cannot be doubted; but, if these interpretations of the act are inconsistent with the above-mentioned decisions of the ultimate authority, it is obvious that neither of such citations lends support to the order in the present case.

In Burlingham et al., Trustees, v. Crouse, the ruling of the Circuit Court of Appeals for the Second Circuit (181 Fed. 479, 104 C. C. A. 227) against the claim of a trustee in bankruptcy that he was entitled to the benefits of two policies outstanding upon the life of one of the bankrupts was affirmed. The policies were written by the Equitable Life Assurance Society, April 10, 1902, upon the life of Thomas A. McIntyre, and are thus described in the opinion:

"They were known as 'guaranteed cash-value, limited-payment, life policies,' each providing that upon the death of the insured the company would pay to his executors, administrators or assigns the sum of $100,000 in fifty annual installments, or the sum of $53,000 in cash, a total of $106,000 for the two policies."

On April 14, 1906, the policies were assigned by the insured to his firm, T. A. McIntyre & Co., subsequently adjudicated bankrupt, both individually and as a copartnership; and the firm assigned the policies to the insurer on April 24, 1907, "as collateral security for a loan of $15,370." On February 25, 1908, two months prior to the proceedings in bankruptcy, the firm assigned the policies to one Crouse, subject to the prior assignment as security. On April 25, 1908, the proceedings in bankruptcy were instituted and the adjudication occurred May 21, 1908; the assignee Crouse having paid meantime the premiums ac-

crued on the policies, $6,078.38. The trustees in bankruptcy were elected July 24, 1908, and the insured, McIntyre, died July 29, 1908, so that the policies then became payable, and the insurer paid into court the proceeds thereof, less the amount of its loan, making the payment $90,698.32. It is stated in the opinion that the policies had a cash surrender value of $15,370 "when the trustees qualified," which was the amount of the above-mentioned loan thereon; but their suit to recover the excess was predicated on the contention that the bankrupt firm was vested with a transferable property right in the policies, far in excess of the loan, and that the transfer to Crouse constituted an unlawful preference under the terms of the Bankruptcy Act. Conceding that a valuable and transferable property interest of the firm was thus assigned, the Circuit Court of Appeals "held that under the circumstances the policies did not pass to the trustees as assets," so that the action to set aside the transfer to Crouse as a preference "could not be maintained."

We believe the rulings of the Supreme Court upon the issue thus presented are decisive of the instant inquiry. The opinion of Mr. Justice Day remarks, that "the correctness of this decision depends primarily upon the construction of section 70a of the Bankruptcy Act," with subdivision 5 as the special provision involved for interpretation. It refers to the general terms of the subdivision vesting in the trustee transferable property, followed by "the proviso with' reference to insurance policies which have a cash surrender value," and then states:

"Two constructions have been given this section, and the question, as presented in this case, has not been the subject of direct determination in this court. The one favors the view that only policies having a cash surrender value are intended to pass to the trustee for the benefit of creditors. The other, conceding that the proviso deals with this class of policies, maintains that policies of life insurance which have no surrender value pass to the trustee under the language of section 70a immediately preceding the proviso, which reads: 'Property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him.'"

The cases upholding these views respectively are cited, including In re Welling, supra, In re Orear, 178 Fed. 632, 102 C. C. A. 78, 30 L. R. A. (N. S.) 990, and other authorities for the last-mentioned view, and the opinion proceeds:

"To determine the congressional intent in this respect requires a brief consideration of the nature of the rights dealt with. Life insurance may be given in a contract providing simply for payment of premiums on a calculated basis which accumulates no surplus for the holder. Such insurance has no surrender value. Policies, whether payable at the end of a term of years or at death, may be issued upon a basis of calculation which accumulates a net reserve in favor of the policy holder and which forms a consequent basis for the surrender of the policy by the insured with advantage to the company upon the payment of a part of this accumulated reserve. This feature of surrender value was discussed by Judge Brown of the Southern district of New York, in Re McKinney [D. C.] 15 Fed. 535, 537," quoted thereupon.

After review of the earlier rulings in Holden v. Stratton, 198 U. S. 202, 25 Sup. Ct. 656, 49 L. Ed. 1018, and Hiscock v. Mertens, 205 U. S. 202, 27 Sup. Ct. 488, 51 L. Ed. 771, the opinion mentions the fact that in the Hiscock Case the surrender value of the policies appeared

to be less than $6,000 at the date of bankruptcy, whereas, shortly thereafter "the maturity of one of the policies would give it a value of over $11,000," but that it was held "that this circumstance made no difference in the right of the insured to pay the surrender value and hold the policy." Its interpretation of the act, which we believe applicable here, is then stated:

"True it is that life insurance policies are a species of property and might be held to pass under the general terms of subdivision 5, § 70a; but a proviso dealing with a class of this property was inserted and must be given its due weight in construing the statute. It is also true that a proviso may sometimes mean simply additional legislation, and not be intended to have the usual and primary office of a proviso which is to limit generalities and exclude from the scope of the statute that which would otherwise be within its terms.

"This proviso deals with explicitness with the subject of life insurance held by the bankrupt which has a surrender value. Originally life insurance policies were contracts in consideration of annual sums paid as premiums for the payment of a fixed sum on the death of the insured. It is true that such contracts have been very much varied in form since, and policies payable in a period of years so as to become investments and means of money saving are in common use. But most of these policies will be found to have either a stipulated surrender value or an established value, the amount of which the companies are willing to pay and which brings the policy within the terms of the proviso (Hiscock v. Mertens, supra) and makes its present value available to the bankrupt estate. While life insurance is property, it is peculiar property. Legislatures of some of the states have provided that policies of insurance shall be exempt from liability for debt, and in many states provision is made for the protection from such liability of policies in favor of those dependent upon the insured. See Holden v. Stratton, supra.

"Congress undoubtedly had the nature of insurance contracts in mind in passing section 70a with its proviso. Ordinarily the keeping up of insurance of either class would require the payment of premiums perhaps for a number of years. For this purpose the estate might or might not have funds, or the payments might be so deferred as to unduly embarrass the settlement of the estate. Congress recognized also that many policies at the time of bankruptcy might have a very considerable present value which a bankrupt could realize by surrendering his policy to the company. We think it was this latter sum that the act intended to secure to creditors by requiring its payment to the trustee as a condition of keeping the policy alive. In passing this statute Congress intended, while exacting this much, that when that sum was realized to the estate the bankrupt should be permitted to retain the insurance which, because of advancing years or declining health, it might be impossible for him to replace. It is the twofold purpose of the Bankruptcy Act to convert the estate of the bankrupt into cash and distribute it among creditors and then to give the bankrupt a fresh start with such exemptions and rights as the statute left untouched. In the light of this policy the act must be construed. We think it was the purpose of Congress to pass to the trustee that sum which was available to the bankrupt at the time of bankruptcy as a cash asset, otherwise to leave the insured the benefit of his life insurance."

The opinion above described was attended by two others, involving like issues under the act and further exemplification of the construction there adopted: (1) In Everett, Trustee v. Judson, on certiorari to the same court, its ruling (192 Fed. 834, 113 C. C. A. 158) in favor of the executor of the estate of the insured bankrupt was affirmed. Involuntary proceedings in bankruptcy were pending against the insured and his copartners in business when the insured committed suicide; the adjudication of bankruptcy against the firm occurring, not only after the appearance of the insured therein, but five days subsequent to his death. He owned three life insurance policies aggregat-

ing $16,000, made payable to his estate, having cash surrender values respectively, subject to loans thereon which left a small excess over such value, aggregating $68.80, when the petition in bankruptcy was filed. After the death of the insured the insurance companies paid to the trustee (under agreement) $8,675.14 upon the policies, and the issue arose over claim of the trustee to the entire proceeds and claim of title thereto by the executor of the deceased, less the above-mentioned residue of cash surrender value. The opinion thereupon, referring to the Burlingham Case, states that "the principles therein laid down are controlling," but that the instant case has a "feature not directly involved" in that case, as the death of the insured (by suicide) occurred prior to the adjudication of bankruptcy. Its interpretation, in that view, of the various provisions of the act as fixing the line of cleavage, so that "the property which vests in the trustee at the time of adjudication is that which the bankrupt owned at the time of the filing of the petition," and ruling thereupon for affirmance of the order in favor of the executor's claim, leave no room, as we believe, for support of the order in favor of the trustee in the case at bar. (2) The other case of Andrews, Executor, v. Partridge, Trustee, reached the Supreme Court, through writ of certiorari to the Circuit Court of Appeals for the Third Circuit. It involved, in substance, like issue with that presented in the Burlingham Case, but the ruling of the Circuit Court of Appeals awarded the net proceeds of the insurance policies in controversy to the trustee in bankruptcy. 191 Fed. 325, 112 C. C. A. 69, 41 L. R. A. (N. S.) 123. This judgment was reversed as inconsistent with "the principles laid down" in each of the foregoing cases.

We are of opinion, therefore, that the order in the case at bar is inconsistent with the doctrine thus settled by the Supreme Court, and that the petitioners are entitled to the benefits of the policy in controversy. The contention that the policy is not one of life insurance, within the meaning and effect of the proviso as above construed, because of the several options open to the insured after the expiration of twenty years, we believe to be untenable. Not only were the operative terms, at the date of bankruptcy, purely life insurance for the benefit of the wife, but we understand the policy, as an entirety, to be well recognized—both generally and in the above quotations from the Burlingham Case—as within the class of property embraced in the benefits of the proviso. Policies providing like optional benefits were directly involved in Holden v. Stratton, ante, and Hiscock v. Mertens (cited with approval in the Burlingham Case), and in each the application of the proviso to such policies was expressly upheld. See In re Welling, wherein like form of policy was involved. In reference to the several Wisconsin authorities, cited for and against this contention on behalf of the trustee, it is sufficient to remark that their definitions of life insurance policies relate alone to exemptions thereof provided by the state statute, so that their import can have no bearing upon the present inquiry, although of undoubted importance whenever an issue arises of exemption within such statutes.

In conformity with the foregoing view of the interpretation thus adopted by the ultimate authority, the order of the District Court is reversed, with direction to grant the relief sought by the petitioners.