### In re JAMISON BROS. & CO.

#### (District Court, E. D. Pennsylvania. April 1, 1915.)

#### No. 4060.

1. BANKRUPTCY ⬤◆339—DETERMINATION OF CONTROVERSIES—FINDING OF FACTS.

Under the proviso of Bankr. Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 (Comp. St. 1913, § 9654), that when any bankrupt shall have any insurance policy, which has a cash surrender value, payable to himself, his estate, or his personal representatives, he may pay or secure to the trustee such surrender value, and continue to hold the policy free from the claims of creditors, and the laws of Pennsylvania, under which a policy taken out for the benefit of insured's wife, or bona fide assigned to her, becomes her property as against creditors, whether the cash surrender value of endowment policies payable to insured's wife, if living, or, if not, to insured's executors, administrators, or assigns, subject to the right of insured to change the beneficiary, or of a policy payable to insured if living at the time of payment, and otherwise to his wife or his estate, which policies had been duly surrendered after insured's adjudication in bankruptcy, belonged to the trustee in bankruptcy or the wife, depended upon the facts as to whether the husband had, in addition to giving the wife the fruits of the main contract of insurance, also given her the fruits of the ancillary contract to return a part of the premiums paid on surrender of the policy, and the facts as to whose money paid the premiums, and the referee, in determining a controversy with respect to such surrender value, should have found such facts.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 525, 526; Dec. Dig. ⬤◆339.]

2. BANKRUPTCY ⬤◆143—PROPERTY PASSING TO TRUSTEE—INSURANCE POLICIES.

Where there has been merely a designation of a beneficiary to receive moneys payable on the death of insured, and this designation is open to recall or change by insured, to whom also belongs the right to cancel or surrender the policy, the surrender value of the policy passes to his trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224; Dec. Dig. ⬤◆143.]

⬤◆For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. BANKRUPTCY** ⬦⇒143—PROPERTY PASSING TO TRUSTEE—INSURANCE POLICIES.

Where insured's wife, children, or a dependent relative has been made the owner of a policy, by its having been taken out for or bona fide assigned to them, within the Pennsylvania statute, under which a policy taken out for the benefit of insured's wife or bona fide assigned to her becomes her property as against creditors, the cash surrender value of the policy does not pass to insured's trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224; Dec. Dig. ⬦⇒143.]

In Bankruptcy. In the matter of Jamison Bros. & Co., bankrupts. On petition by the trustee for review of an order of the referee. Order revoked, and report remitted to the referee, with directions.

John C. Gilpin and George S. Graham, both of Philadelphia, Pa., for petitioner.

Henry A. Hoefler, of Philadelphia, Pa., for trustee.

DICKINSON, District Judge. [1] The order in this case concerns the title to certain funds in the hands of the trustee. The funds represent the surrender value of certain policies of life insurance. The moneys were claimed and awarded by the referee to Nellie S. Maguire, wife of Edward L. Maguire, one of the bankrupts. The basis of her claim is this:

The petition in bankruptcy was filed May 9, 1911. At that time the above-named bankrupt held (among others) a policy for $10,000 in the Prudential Life Insurance Company of America, and four policies, aggregating $10,000, in the Equitable Life Assurance Company of the United States. After the adjudication the policies lapsed for nonpayment of premiums, and were subsequently duly surrendered, and the net surrender values were turned over to the trustee, subject to a determination of the question to whom the moneys rightfully belonged.

The policies were each of the endowment type, and were issued to the bankrupt as the insured, and, except the Prudential policy, were made payable "to his wife, Nellie S. Maguire, if living, and, if not, then to the assured's executors, administrators, or assigns, subject to the right of the assured to change the beneficiary." The Prudential policy was payable to the assured, if living at the time of payment; otherwise, payable to the wife or to his estate, as in the other policies. The premiums had been paid and the policies continued in force to a time subsequent to the adjudication of bankruptcy.

The moneys awarded to the wife are claimed by the general creditors, and this petition to review the order made by the referee was duly filed, presenting to this court for its decision the question of title to these moneys. The referee has based his award upon the rulings in the cases of In re Booss (D. C.) 154 Fed. 494, 18 Am. Bankr. Rep. 658, In re Lyon, 32 Am. Bankr. Rep. 483, and Burlingham v. Crouse, 181 Fed. 479, 104 C. C. A. 227, 30 Am. Bankr. Rep. 6. The trustee maintains his claim of title under the ruling in the case of In re

Herr, 182 Fed. 716, 25 Am. Bankr. Rep. 142, which he further asserts to be controlling upon the referee in the present case.

Among the objects to be accomplished through bankruptcy proceedings is that of administering for the benefit of the creditors all the property and assets of the bankrupt which by legal process could otherwise have been applied to the payment of the claim of that creditor who invoked the aid of such process in the collection of the debt due him. In the broad view, a contract of insurance must be regarded as we would regard any other contract entered into by the bankrupt. Given an insurable interest, any one may insure his own life and make the insurance payable to himself, or any named beneficiary, or he may in like manner insure the life of another. Under the laws of the state of Pennsylvania, a policy taken out for the benefit of the wife of the insured, or bona fide assigned to her, becomes her property in so far as that its avails may be received and held by her immune from any successful attack by creditors of the insured. What the insurance company is to pay is determined by the contract into which it has entered, and what the wife is entitled to receive by the terms of the assignment to her. One of the conditions of the contract of insurance may be that the premiums shall be duly paid. If so, there is no obligation on the part of the company to pay if the premiums are unpaid. On the other hand, there is no obligation (unless in the contract) upon the insured or beneficiary to pay the premiums. Either the insured or the beneficiary may pay, and, if the premiums are accepted by the company, its obligation to meet the terms of the policy continues. When the day of payment arrives, the company (as has been said) makes payment to the amount and to the person named in its contract. Whether, as is the case here with the Prudential policy, the policy is made payable to the insured in one event, to the beneficiary in another event, or to the estate of the insured in still another event, or whether, as in the case of the Equitable Company, the policies are made payable to either the beneficiary or the estate of the insured, according to the event, the obligation of the company is the same.

This principle of obligation which is applied in construing what may be called the main contract of the company applies also to the collateral, contingent, substituted, or subsidiary contracts into which it has entered, such as issuing paid-up insurance, paying surrender values, and the like. It is altogether purely a matter of contract, and it is not a little difficult to understand what the suggested wishes or in this sense the custom or practices of the insurance companies have to do with it. Although policies of insurance are contracts, and, as has been said, are in the main to be regarded as are other contracts, rights which have grown up under them are nevertheless to be considered as modified or enlarged by the legislation pertaining thereto. One is the right to which reference has already been made to assign them to the wife of the insured. The right so acquired by her would seem not to be affected by the thought that the husband need not have made this gift to her unless he chose, or that in making the gift he had reserved the right to revoke, if the fact remained that he had

made it and the gift stood unrevoked. Another modification is that introduced by the proviso to section 70a of the Bankruptcy Act. Where there is a policy payable to the insured, his trustee might seek to exercise the right which the insured also possesses of continuing the payments of premiums. The act of Congress extinguishes this right of the trustee upon payment to him of the surrender value of the policy. When such payment is made, all right of the trustee and of the bankrupt estate to the contract of insurance is gone, and so far as concerns the estate it is as if no policy was in existence.

There remains to consider only the proper legal conclusion flowing from one other condition of facts, and that is, as is the case here, the lapse of a policy from nonpayment of premium. If the lapse continues for such length of time that all claims against the insurance company are lost, the end of the whole matter has been reached. If, however, the obligation of the insurance company to pay the surrender value of the policy remains, then the inquiry arises to whom is the money payable? It is clear that the answer to this question is to be found in the contract into which the company has entered, and this answer in turn determines to whom the money belongs. The touchstone to the decision of the question lies in this supposititious case. The trustee, or the wife, or both separately, might bring suit against the company. The question could then have been raised by a defense to either suit, or by admitting the obligation to pay and calling upon the claimants to interplead. The case may in principle be so determined now. It is apparent that its determination calls for the finding of facts on which the report of the referee is silent. The facts could doubtless be found from the evidence already in; but, inasmuch as the case must go back in any event to the referee to make distribution, it seems best to let it go back with these facts still open.

Without forecasting any ruling involved, this should perhaps be added for the guidance of the referee. The title of the wife to these moneys apparently springs, if from anything, from the gift of the husband. It is clear he gave her in certain contingencies the fruits of the main contract of insurance. Did he also give her the fruits of the contract to return part of the premiums paid? If he did, they are hers. If he did not, she has no title by gift. It may be, however, that a fuller development of the facts will disclose claims of title which arise out of whose money paid the premiums which the insurance company has returned. Thus seems the case to stand upon principle.

There is left for consideration only the answer to the query of whether the question of title to these moneys is still an open one. The trustee argues that it is not; that In re Herr, supra, rules against any possible claim of the wife under the facts as found by the referee. If this case so rules, we deem the ruling binding, and one which must be followed. The effect of the ruling may be discussed in connection with that of In re Dolan (D. C.) 182 Fed. 949, 25 Am. Bankr. Rep. 145, in which the governing principles are clearly laid down by Judge McPherson. He makes there the distinction which we have attempted to draw between what we have termed the main contract of insurance

and the ancillary contracts growing out of its annulment. The distinction is brought out in clearer relief as the difference between the assignment of the policy contract and the mere designation of the person who is to receive the money payable in different contingencies. It is to be noted that the referee and the court there found from the evidence in the case the facts, part of which we are unable to find from the report of the referee here, not only who was designated as beneficiary to receive the money payable on the death of the insured, but also who owned the contract of insurance.

[2, 3] We are of opinion that, whatever may be the case in other jurisdictions, the rulings by which we are bound do not leave open to discussion these propositions:

1. Where there has been merely a designation of a beneficiary to receive the moneys payable on the death of the insured, and this designation is open to recall or change by the insured, to whom also belongs the right to cancel or surrender the policy there, if the insured be bankrupt, the surrender value of the policy passes to his trustee.

2. Where, however, the wife, children, or a dependent relative of the insured has been made the owner of the policy, within the meaning of the Pennsylvania statutes, by it having been taken out for or bona fide assigned to them, then nothing passes to the trustee.

These propositions are supported by In re Booss (D. C.) 154 Fed. 494, 18 Am. Bankr. Rep. 658; In re Herr, 182 Fed. 716, 25 Am. Bankr. Rep. 142; In re Dolan (D. C.) 182 Fed. 949, 25 Am. Bankr. Rep. 145; Allen v. Trust Co., 143 Wis. 381, 127 N. W. 1003, 139 Am. St. Rep. 1107, 25 Am. Bankr. Rep. 126.

As already stated, the evidence already offered doubtless affords the means of applying these principles to the present case; but as one of the exceptions to the referee's findings goes to the question of evidence, and as the whole case remains before the referee, the present order is formally revoked, and the report remitted to the referee, with directions to receive and hear any relevant evidence and testimony which any of the parties have to offer, and to find the facts. It may be that, as in the Dolan Case, the application itself will throw some light upon the fact upon which the distinction pointed out turns.