## In re FETTERMAN.

### (District Court, N. D. Ohio, E. D. July 17, 1917.)

### No. 5752.

1. BANKRUPTCY ⊛143(12)—PROPERTY PASSING TO TRUSTEE—STATUTE.

Under Bankr. Act July 1, 1898, c. 541, § 70a, par. 5, 30 Stat. 565 (Comp. St. 1916, § 9654), declaring that property of a bankrupt which prior to the filing of the petition he could by any means have transferred, or which might have been levied on and sold under judicial process against him, shall pass to the trustee, but that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself or his estate, or personal representatives, he may, within 30 days after the cash surrender value has been ascertained and stated by the company issuing the same, pay or secure to the trustee the sum stated and continue to carry the policy free from the claims of creditors, an insurance policy though obtained by the bankrupt will not pass to his creditors unless it has a cash surrender value payable to the bankrupt, his estate, or personal representative, and so a life policy issued on application of a bankrupt in favor of his wife, which reserved in the bankrupt no power to change the beneficiary, and declared that the cash surrender value should be paid only upon execution and delivery to the insurer of a satisfactory release of all interests and claims to the avails, will not pass to the trustee.

2. BANKRUPTCY ⊛396(3)—EXEMPTIONS—INSURANCE POLICY.

Bankr. Act July 1, 1898, c. 541, § 6, 30 Stat. 548 (Comp. St. 1916, § 9590), declares that it does not affect exemptions in favor of a bankrupt prescribed by the state laws in force at the time of the filing of the petition in the state wherein the bankrupt was domiciled. A voluntary bankrupt domiciled in Ohio had previous to bankruptcy applied for a life policy naming his wife as beneficiary, which reserved to him the right to change the beneficiary and declared that, upon default in payment of any premium after two full premiums had been paid, the policy might be surrendered with the written assent of the person to whom it was made payable. Gen. Code Ohio, §§ 9393, 9394, declare that any person may effect insurance on his life for any definite period of time, or for the term of his natural life for the sole benefit of his widow and children or either and that the net amount of such insurance shall be payable to the widow or children for their own use exempt from all claims of creditors of such deceased person. *Held*, that such policy was exempt though a subsequent section of the Ohio Code authorized recovery of premiums paid in fraud of creditors.

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Bankruptcy. In the matter of the bankruptcy of Louis R. Fetterman. Petition by the bankrupt to review an order of the referee denying the bankrupt's claim that insurance policies were exempt. Order reversed.

Thompson, Hine & Flory, of Cleveland, Ohio, for bankrupt.
Spear, Mills, Knight & Godfrey, of Cleveland, Ohio, for trustee.

WESTENHAVER, District Judge. The bankrupt, Louis R. Fetterman, in the schedule filed with his voluntary petition in bankruptcy October 5, 1915, claimed as exempt two policies in the Berkshire Life Insurance Company for $1,000 and $1,500, respectively, by virtue of sections 9393, 9394, and 9395, G. C. of Ohio. The trustee first set aside these policies as exempt, and exceptions being filed to his report, thus setting them aside, by leave obtained from the referee, the trustee filed an amended report, refusing to set them aside. Bankrupt having excepted to this later action of the trustee, the referee held that the policies were not exempt, and ordered the bankrupt to surrender them. A petition to review this order is now before me for decision.

Upon an examination of the referee's findings of fact, I was of opinion that sufficient facts were not found to enable me to decide properly the questions involved, and thereupon counsel, at my request, stipulated the policies into the record to be considered by me.

The $1,000 policy was issued August 3, 1899. It was issued on the application of the bankrupt in favor of his wife. It reserves no power in the insured to change the beneficiary. It is a straight life policy, payable only at the death of the insured. It has a cash surrender value which shall be paid only upon the execution and delivery to the company "of a satisfactory release of all interests and claims to the avails thereof."

The $1,500 policy was issued October 10, 1913. It was issued on the application of Louis R. Fetterman for the benefit of his wife. It is a straight life policy, payable only at his death. It reserves to the insured the right to change the beneficiary without his wife's consent. It provides that, upon default in the payment of any premium, after two full annual premiums have been paid, the policy may be surrendered "with the written assent of the person to whom it is made payable."

It is conceded that the wife is still living, and that no appointment of any other person has been made by the insured as beneficiary in the second policy.

[1] Upon these facts two questions are presented for decision: (1) Whether under section 70a of the Bankruptcy Act these policies, or either of them, pass to the trustee to the extent of the cash surrender value thereof; (2) whether under sections 9393–9396 and 9398, G. C., these policies, or either of them, are exempt from the demands of creditors, and therefore protected by section 6 of the Bankruptcy Act.

Section 6 of the Bankruptcy Act is as follows:

"This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of

the petition in the state wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition."

Section 70a, par. 5, is as follows:

"Property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him: Provided, that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets."

In Holden v. Stratton, 198 U. S. 202, 25 Sup. Ct. 656, 49 L. Ed. 1018, these provisions were construed, and it was held that section 6 of the Bankruptcy Act protected any exemption given by state law of insurance policies, even though under section 70a of the Bankruptcy Act they possessed a surrender value which would pass to the trustee.

In Hiscock v. Mertens, 205 U. S. 202, 27 Sup. Ct. 488, 51 L. Ed. 771, it was held that a cash surrender value of a policy allowed by the insurer, even though not provided in the policy, would pass to the trustee under section 70a of the Bankruptcy Act. In passing, it should be noted that one policy in that case, payable to the bankrupt's wife, if she should survive him, was dropped from the controversy (205 U. S. page 205, 27 Sup. Ct. 488, 51 L. Ed. 771), evidently because all parties were of opinion that nothing passed to the trustee.

Obviously, section 70a of the Bankruptcy Act applies only when an insurance policy has a cash surrender value, payable to the bankrupt, his estate, or personal representatives. The language used admits of no other conclusion. If a policy is made payable to some person other than the bankrupt, manifestly the proceeds thereof do not belong to him and are not a part of his assets which would pass to the trustee. If the cash surrender value is not, by the terms of the policy, payable to the bankrupt, but is payable to a beneficiary, the same conclusion follows. If the cash surrender value is payable only to the insured with the consent of all persons interested in the policy, or on a release of the person's interest, then manifestly the same conclusion follows, for the beneficiary is the person who owns or is primarily interested in the cash surrender value, and it is his consent or release which the company must have before paying the cash surrender value. That the rights and interest of the beneficiary of the policy, even if the insurance has been obtained by the insured, and the premiums are paid by him, are as herein stated, is sufficiently evidenced by the following authorities: Manhattan Life Ins. Co. v. Smith, 44 Ohio St. 156, 5 N. E. 417, 58 Am. Rep. 806; Union Central Life Ins. Co. v. Buxer, 62 Ohio St. 390, 57 N. E. 66, 49 L. R. A. 737; Central Nat. Bank of Washington v. Hume, 128 U. S. 195, 9 Sup. Ct. 41, 32 L. Ed. 370.

In Burlingham v. Crouse, 228 U. S. 459, 33 Sup. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148, section 70a of the Bankruptcy Act was further construed, and these respective rights of insured and beneficiary were recognized and applied. In that case it was held that, independently of the state exemption laws, no interest was acquired by a trustee of a bankrupt in life insurance policies, except on the conditions and to the extent provided in this section. Prior thereto the inferior United States courts of different jurisdictions had been divided. ' Some had adopted the view that all life insurance policies, payable to the insured and which might be levied upon and sold under judicial process, even though they had no cash surrender value, should pass to the trustee; but this case finally established the proposition that life insurance policies, having no cash surrender value payable to the bankrupt, his estate, or personal representatives, do not pass to the trustee as general property, but remain the property of the bankrupt, who is not limited in dealing with them. Mr. Justice Day sums up the reasons for this holding in these words:

"Congress undoubtedly had the nature of insurance contracts in mind in passing section 70a with its proviso. Ordinarily, the keeping up of insurance of either class would require the payment of premiums perhaps for a number of years. For this purpose the estate might or might not have funds, or the payments might be so deferred as to unduly embarrass the settlement of the estate. Congress recognized also that many policies at the time of bankruptcy might have a very considerable present value which a bankrupt could realize by surrendering his policy to the company. We think it was this latter sum that the act intended to secure to creditors by requiring its payment to the trustee as a condition of keeping the policy alive. In passing this statute Congress intended, while exacting this much, that when that sum' was realized to the estate the bankrupt should be permitted to retain the insurance which, because of advancing years or declining health, it might be impossible for him to replace. It is the twofold purpose of the Bankruptcy Act to convert the estate of the bankrupt into cash and distribute it among creditors, and then to give the bankrupt a fresh start with such exemptions and rights as the statute left untouched. In the light of this policy the act must be construed. We think it was the purpose of Congress to pass to the trustee that sum which was available to the bankrupt at the time of bankruptcy as a cash asset, otherwise to leave to the insured the benefit of his life insurance."

It was accordingly held that the cash surrender value at the date of the filing of the petition should be paid to the trustee, even though the bankrupt between that time and the date of adjudication had committed suicide, thereby maturing the face value of the policy. Similar . holdings were made in Everett v. Judson, 228 U. S. 474, 33 Sup. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154; Andrews v. Partridge, 228 U. S. 479, 33 Sup. Ct. 570, 57 L. Ed. 929.

As a result of these decisions, the policy payable to the wife, in which is reserved no right to change the beneficiary, does not pass to the trustee.

[2] As to the policy in which is reserved the right to change the beneficiary without her consent, and providing a cash surrender value upon default after payment of two annual premiums, a different question is presented. In some cases it has been held that the insured's absolute dominion and control is the equivalent of a policy payable to the insured, or his estate or personal representatives. These

cases are collected in a note, page 1017, Collier on Bankruptcy. A similar holding was made by the Circuit Court of Appeals, Fifth Circuit, Malone v. Cohn, 236 Fed. 882, 150 C. C. A. 144, in which Burlingham v. Crouse, supra, is cited.

On the other hand, a different conclusion seems to me to follow from certain other decisions rendered since Burlingham v. Crouse, supra, was decided, namely, In re Churchill, 209 Fed. 766, 126 C. C. A. 490; In re L. Hammel & Co., 221 Fed. 57, 137 C. C. A. 80; In re Arkin, 231 Fed. 947, 146 C. C. A. 143. These decisions are by the Circuit Courts of Appeals of the Second and Seventh Circuits.

I shall not at this time express an opinion in view of this apparent conflict of authority, for I am of opinion that the second policy, in which the right to change the beneficiary is reserved, is exempted under the Ohio law. It was so held in Re Schaefer (D. C.) 189 Fed. 187, and in Re Young (D. C.) 208 Fed. 373, 31 Am. Bankr. R. 29, decided by Judge Killits. These cases were decided before the amendment of 1913, 103 O. L. 558. The 1913 amendment, as I construe it, does not change the law as it previously stood, except to include, within the exemption provisions, policies made payable to other dependent relatives, or to creditors. Policies payable to wife or children, which are exempted by this amendment, were, in my opinion, exempted under the old law.

This conclusion follows also from Lytle v. Baldinger, 84 Ohio St. 1, 9, 10, 95 N. E. 389, Ann. Cas. 1912B, 894, which was also decided under these sections of the General Code, prior to the 1913 amendment. In that case the life insurance policies were payable to the insured. He, while insolvent and shortly prior to his death, transferred these policies to his wife and children; and shortly after his death, and after the proceeds had become available, an action was brought by creditors to set aside this transfer as made with intent to hinder, delay, and defraud creditors. It was held that the action could not be maintained, and that insurance policies were not a part of the property of an insured, which could be said to have been transferred in fraud of creditors. The reasoning of Judge Donahue, who delivered the opinion, shows clearly that these sections were construed as exempting policies and the proceeds thereof payable to a wife or children, or transferred and assigned by the insured to them, or for their benefit, from the demands of creditors; and that the remedy of creditors, if any, in this situation, is under section 9395, G. C. of Ohio (R. S. § 3628). This section limits the creditors' right to premiums paid in fraud of creditors.

That question is not before me. Both Lytle v. Baldinger, supra, and Central Nat. Bank of Washington v. Hume, supra, may be consulted in determining the extent of this right in the creditors, and the conditions under which it is available to them.

I am of opinion that the beneficiary, the wife, is entitled to retain both policies. The order of the referee will therefore be reversed. An exception may be noted on behalf of the trustee.