**In re REITER.**

**Ex parte HANRAHAN.**

**No. 338.**

Circuit Court of Appeals, Second Circuit.

May 16, 1932.

CHASE, Circuit Judge, dissenting.

Robert P. Levis, of New York City, for appellant.

David Haar, of New York City, for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

Reiter, the bankrupt, while domiciled in New York, took out twenty-three insurance policies upon his life. The beneficiaries were in some cases his wife; in some, she and his daughters; in one, she, a daughter, and a niece; in some his daughters; and in some a company in which he was interested. Four were written after March 31, 1927, when section 55-a of the Insurance Law of New York went into effect (Consol. Laws N. Y., c. 28); all had a provision authorizing Reiter to change the beneficiaries at his pleasure. He removed to Connecticut, took up his domicile there on April 10, 1929, and became a bankrupt more than six months later. All his creditors had become such before he moved. The trustee having learned from the insurers the amount of the surrender values of all the policies, served notice upon Reiter under the proviso of § 70a (5), 11 USCA § 110 (a) (5), demanding the amounts returned, and after thirty days had passed without response, applied to the bankruptcy court for an order requiring him to deliver the policies, to make his "estate" the beneficiary, and to co-operate in securing the surrender values from the insurers. The referee made such an order, which the judge affirmed.

Reiter's power to change the beneficiary, reserved in all these policies, "might have been exercised for his own benefit," and was therefore within section 70a (3), 11 USCA § 110 (a) (3). The order was certainly justified under section 70a (5), so far as it directed him to deliver the policies to the trustee (Cohen v. Samuels, 245 U. S. 50, 38 S. Ct. 36, 62 L. Ed. 143; Cohn v. Malone, 248 U. S. 450, 39 S. Ct. 141, 63 L. Ed. 352), except as any local law might forbid that result. The nub of the case is therefore whether the statutes of New York or Connecticut stand in the way.

Reiter argues that the New York statute (section 55-a of the Insurance Law) must be read into the contracts, and, if not, that the Connecticut statute (section 13 of chapter 58, Pub. Acts 1929), is at least one of exemption as to the wife, which Bankr. Act, § 6a, 11 USCA § 24, preserves. The New York statute is an exemption act; we so held in Re Messinger, 29 F.(2d) 158, 68 A. L. R. 1205, for reasons which still seem to us satisfactory. It declared as to any life policy that the beneficiary should "be entitled to its proceeds and avails against the creditors and representatives of the insured * * * whether or not the right to change the beneficiary is reserved or permitted, and whether or not the policy is made payable to the person whose life is insured if the beneficiary * * * shall predecease such person." A policy without such a power may make the beneficiary the obligee absolutely, or only contingently upon his survival. In so far as section 55-a made absolute what would otherwise be a contingent, it did indeed change the obligation; we may assume for argument that it was written into the policy. As to creditors, however, the section does not profess to change the contract; they are not parties to it. The rights of those who are—the insurer, the insured, and the beneficiary—remain unaffected; but the section by its fiat declares that the creditors may not touch any interests of the insured, resulting from the reservation of the absolute power of disposition. Without such an exemption they could have done so (sections 150, 153, Real Property Law [Consol. Laws N. Y. c. 50]; these sections apply to personal property, In re Moehring, 154 N. Y. 423, 48 N. E. 818); the policy remained his. Therefore the section merely took away remedies against him, otherwise available in this class of cases; it was an exemption statute, and applicable in bankruptcy only by virtue of section 6a, 11 US CA § 24. Holden v. Stratton, 198 U. S. 202, 25 S. Ct. 656, 49 L. Ed. 1018. As Reiter's domicile for the six months before petition filed was Connecticut, the exemption law of that state alone controls. At best this touches only his wife's interest, and the order was right as to the daughters, the niece, and the company beneficiary.

■ However, if the Connecticut law gives an exemption to the interest of the wife, the order was pro tanto wrong. When Reiter became domiciled there, the only pertinent provision was section 5277 of the Revised Statutes 1918, which was repealed a few days later and section 13 of Chapter 58 of the Pub. Acts of 1929 substituted. As we can see no substantial difference between the two, we ignore the earlier. Section 13 dealt with the "sole and separate estate of married woman"; its relevant language is as follows: "The proceeds of any policy of life insurance expressed to be for the benefit of a married woman, or assigned to her or in trust for her, shall be her sole and separate estate." There might indeed be a question whether this was, properly speaking, an exemption act at all, were it not so clearly intended to supersede the earlier acts, which had existed since 1850, and which plainly were, for they expressly excluded the husband's creditors from any recourse against the wife's interest.

The only decision of the Supreme Court of Connecticut (Neary v. Metropolitan Life Ins. Co., 92 Conn. 488, 103 A. 661, L. R. A. 1918F, 306), which even remotely touches the situation, has too little bearing upon it to be of any service here, and we are thrown back upon the interpretation placed upon similar statutes in other jurisdictions. There is antecedent reason for construing such enactments as applicable to cases where an absolute power to revoke is reserved. They are very common, and are probably not often exercised except in emergencies, so that in fact the paramount purpose of such legislation—which is to protect the wife in cases where the premiums are not paid in fraud of creditors—cannot be realized unless the words be read liberally. Moreover, if they be restricted, there remains only a narrow field for the section to occupy. In policies where no such power is reserved, the interest of the beneficiary is not subject to the insured's creditors anyway, whether it be contingent upon her survival or not. It is her property, not the insured's. Therefore, unless powers to revoke are included, the section would affect no policies except perhaps those where the insured reserved the power to surrender and get the cash value. However, since creditors are chiefly interested in that value, and will, so far as they can, surrender the policy when they get it, such an interpretation would result in protecting the beneficiary when the insured had expressly reserved the power to surrender, but in leaving her defenseless when the substance of that power was reserved in another form. Thus, unless we assume that the section was intended to protect where no protection was necessary, or make distinctions

which would leave unfulfilled its apparent purpose, we must hold that it exempted policies in which a power to revoke was reserved.

The weight of authority is in accord. The Eighth Circuit (In re Orear, 189 F. 888) so construed a Missouri statute (section 5981, Mo. Rev. St. 1879), which said nothing about change of beneficiary, holding that it applied in spite of the reservation of such a power; and in Jens v. Davis (C. C. A.) 280 F. 706, it reached the same result under a similar Iowa statute (section 1805, Iowa Code 1897). However, in Aberle v. McQuaid (C. C. A.) 283 F. 779, it took the opposite view of a Minnesota statute (Gen. St. 1913, §§ 3465, 3466); though this curiously enough expressly mentioned reserved powers to revoke, and was for that reason stronger for the beneficiary than either of the earlier. However, in Ralph v. Cox (C. C. A.) 1 F.(2d) 435, Aberle v. McQuaid was overruled, because meanwhile the state court had taken a different view. Murphy v. Casey, 150 Minn. 107, 184 N. W. 783. The Third Circuit [Smith v. Metropolitan Life Ins. Co., 43 F.(2d) 74], following New Jersey decisions (Farmer, etc., Co. v. Albright, 90 N. J. Eq. 132, 106 A. 545; Merchants', etc., Co. v. Borland, 53 N. J. Eq. 282, 31 A. 272), which had so construed a New Jersey statute (sections 38, 39 of the New Jersey Insurance Law [2 Comp. St. 1910, p. 2850, §§ 38, 39]), held the policy exempt, though the statute was silent as to powers to revoke. On the other hand, in Whiting v. Squires, 6 F.(2d) 100, the Fourth Circuit, because of the state Constitution, felt obliged to construe a North Carolina statute (C. S. § 6464) as excluding policies where the power existed. It does not appear, however, what would have been its interpretation, had it been free to read the statute alone. The District Courts in several cases have extended the exemption to powers of revocation. In re Pfaffinger, 164 F. 526 (Ky.); In re Whelpley, 169 F. 1019 (N. H.); In re Johnson, 176 F. 591 (Minn.); In re Young, 208 F. 373 (Ohio); In re Fetterman, 243 F. 975 (Ohio). In all these the statutes had not expressly provided for the situation.

In Pennsylvania the District Courts in four instances (In re Herr, 182 F. 716; In re Dolan, 182 F. 949; In re Jamison Bros. & Co., 222 F. 92 [semble]; In re Shoemaker, 225 F. 329); construed the Act of April 15, 1868, P. L. 103 of that state, an exemption statute which contained no reference

to reserved powers of revocation, as confined to cases where there were none. The Supreme Court of that state leaned towards the same view (Weil v. Marquis, 256 Pa. 608, 101 A. 70); and in 1919 the Legislature (P. L. 207 [40 PS § 517 note]) covered the situation by a new provision, from which section 55-a of the New York Insurance Law was drawn. Thereafter the point arose in the District Court, (In re Lang, 20 F.(2d) 236) affirmed sub nom. Dussoulas v. Lang (C. C. A.) 24 F.(2d) 254 and was ruled as we later ruled in Re Messinger, supra (C. C. A.) 29 F.(2d) 158, 68 A. L. R. 1205.

In New York before section 55-a was enacted, the statute (section 52 of the Domestic Relations Law [Consol. Laws N. Y. c. 14]) provided that if the wife survived the husband, she should have the money free from his creditors; that if she did not, and the policy so provided, she might bequeath it; and that in the absence of any such disposition by her, it should go to him, or his, her, or their children. In Re White, 174 F. 333, 26 L. R. A. (N. S.) 451, we passed upon a case where the husband, the bankrupt, had power at any time to surrender the policy, and where it went to him if he outlived his wife, the beneficiary. We held that the trustee took the surrender value. It was necessary to decide that section 52 did not exempt the policy in this case, and to do so we read it as throughout limited to policies where the wife kept an interest though she died before the insured. Whether or not this was right—one judge dissented—the decision does not stand as an interpretation of a statute like section 13. In Re Samuels, 254 F. 775 (C. C. A. 2), was on all fours with the case at bar on the facts, and also arose under section 52 of the Domestic Relations Law of New York. Again we held for the trustee, and it would have been enough merely to rely upon our earlier interpretation, for the wife was not within the section, as we had already construed it. We said, however, that the claim, apparently to exemption, would not be good unless the wife were the owner of the policy. The remark was clearly inadvertent, because if she were indeed absolute owner, no question of exemption could arise, for the reasons we have already given. We can scarcely have meant that though she were not, there could be no exemption. Hence the decision in fact must rest upon a construction of section 52, and is no more than a reaffirmation of In re White. We do not regard ourselves therefore as con-

cluded by anything we have heretofore decided.

■ Even though we were in doubt whether that on principle they were right, we should defer to those authorities which have more generally held that the wife's interest is protected, regardless of the power. It follows that the order was wrong as to those policies in which she was a beneficiary. As to those in which she was the only one, the motion should be denied in toto; as to those where she was one among several, the trustee becomes a beneficiary in the place of the others, side by side with her. Such a policy cannot, perhaps, be surrendered in part and retained in part; and, if not, the bankrupt estate cannot be finally settled during the life of the bankrupt, unless the trustee's interest, transferred by operation of law, can be sold. But this is a possibility contemplated in any event by section 70a (5), 11 USCA § 110 (a) (5).

■■ A final question arises as to those parts of the order which directed Reiter to change the beneficiary by substituting the trustee, and to co-operate in securing the cash surrender value. These were properly ancillary to the purposes declared in section 70a (5), and would seem to be among the duties imposed upon the bankrupt by section 7a (4), 11 USCA § 25 (4) which requires him to "execute and deliver such papers as shall be ordered by the court." Jurisdiction to order him to do so is in turn given by section 2 (15), 11 USCA § 11 (15), which empowers the court to "make such orders * * * in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this title." It is true that under section 70a (3), 11 USCA § 110 (a) (3), the power to revoke passes by operation of law to the trustee; it is also true that the proviso to section 70a (5), 11 USCA § 110 (a) (5), apparently contemplates that if the bankrupt does not redeem the policies by paying their surrender value, "the policy shall pass to the trustee as assets." Perhaps as against the insurer his status, as assignee of the policy and the power by operation of law,

would be enough (In re Greenberg (C. C. A.) 271 F. 258); but it was not beyond the powers of the bankruptcy court, in order the better to secure the trustee's rights, to direct Reiter to execute all necessary papers. We think that the order in this respect was right.

Order reversed; cause remanded for further proceedings in accordance with the foregoing.

CHASE, Circuit Judge (dissenting).

I agree that the Connecticut, rather than the New York, law controls. The distinction now important is that while the bankrupt could not be compelled to change the beneficiary if the New York law applied, In re Messinger, supra, under the Connecticut law he is not exempt from that requirement. Accordingly, I agree that the order requiring the change to his estate as the beneficiary under each policy was lawful.

I do not agree, however, that the Connecticut law enabling a wife to hold property, including the proceeds of an insurance policy, as her sole and separate estate, touches the situation. No matter what her rights would be to the proceeds of a policy which matured by death, or otherwise, while she was still the beneficiary, she can have no rights whatever to the proceeds of a policy which is surrendered for its cash value, or matures for any reason, at a time when she is not the beneficiary. Had this bankrupt elected, before bankruptcy, to change the beneficiary from his wife to himself or his estate, in a policy in which his right to change had been reserved, and then surrendered such policy, it cannot be thought that the proceeds would have been payable to the wife. Neither will they be so payable upon surrender after the change of beneficiary is made by him in accordance with the order after bankruptcy. Consequently, the Connecticut law relating to the rights of married women has no effect in this case and all the policies involved stand alike.

I would affirm the order in its entirety.