## HOLDEN *v.* STRATTON.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 209. Submitted April 6, 1905.—Decided May 8, 1905.

The statute of the State of Washington, Laws of 1897, p. 70, exempting proceeds or avails of all life insurance from all liability for any debt, is not in conflict with the constitution of that State as construed by its highest court and exempts the proceeds of paid-up policies, and endowment policies, payable to the assured during his lifetime.

Courts will not read into a broadly expressed state statute of exemption limitations which do not exist therein because they do exist in similar statutes of other States or because they deem the limitations equitable. To do so would not be construction of the statute but legislation; and the broad terms of the statute show an intention of the legislature of the State to adopt broader and more comprehensive exemptions than those adopted by the other States.

Policies of insurance which are exempt under the law of the State of the bankrupt are exempt under § 6 of the bankrupt act of 1898, even though they are endowment policies payable to assured during his lifetime and have cas.a surrender values, and the provisions of § 70a of the act do not apply to policies which are exempt under the state law.

It has always been the policy of Congress, both in general legislation and in bankrupt acts, to recognize and give effect to exemption laws of the States.

SEPARATE proceedings in bankruptcy were begun in the District Court of the United States for the District of Washington, Northern Division, against Daniel N. Holden and

Lizzie Holden, his wife. They were consolidated. Both the parties were adjudicated to be bankrupt, and J. A. Stratton became the trustee of both estates.

All the liabilities of the bankrupts were contracted between the first day of September and the first day of December, 1900, and the creditors of each were the same. There were two policies upon the life of Daniel N. Holden, one for $2,000, the other for $5,000, issued by the same company. Both bore date June 15, 1894, having been issued as the result of an arrangement by which the insured and his wife as the beneficiary surrendered a policy for $10,000, dated May 21, 1890.

The policy for $2,000 was a full-paid, non-participating one, and the amount became due only upon the death of the insured, and was then payable to the wife, or in the event she did not survive her husband, to his executors, administrators or assigns. The policy for $5,000 was on what was termed the semi-tontine plan. An annual premium of $233.80 was required to be paid for ten years from the date of the previous policy, which had been surrendered, that is, until May 21, 1900, and therefore at the date when the bankrupts contracted the debts set forth in their schedules and at the date of the adjudications in bankruptcy, this period had expired and no further payment of premiums was necessary. Upon the death of the insured the amount of the policy was to be paid to the wife as the beneficiary, or, in the contingency of her prior decease, to the executors, administrators or assigns of the insured. It was provided, however, that upon the completion of the tontine dividend period of twenty years—on May. 21, 1910—if the insured was then alive, he or his assigns, if creditors, might surrender the policy and receive its full cash value, or a non-participating policy, payable to the original beneficiary, or if she was not alive, to the executors, administrators or assigns of the insured, or the option was given to keep the policy in force and to withdraw the surplus to the credit of the policy in cash, or use the same to purchase additional insurance.

The bankrupts made application to have these policies set

aside to them, because, it was asserted, they were exempt by the law of the State of Washington. This was resisted by the trustee upon the ground that the policies had a cash surrender value of $2,200, which it was the duty of the bankrupts to pay to the trustee as a condition precedent to the exemption of the policies. The referee sustained the claim of the trustee. His ruling was reversed by the District Court. On a petition for revision the Circuit Court of Appeals held that the bankrupts were obliged to pay the cash surrender value as asserted by the trustee. 113 Fed. Rep. 141. An appeal was prosecuted to this court and was dismissed. 191 U. S. 115. This writ of certiorari was then allowed. 193 U. S. 672.

*Mr. P. P. Carroll* and *Mr. John E. Carroll* for petitioners:

The absolute and unqualified rule of exemption as declared in § 6 of the bankruptcy law is negatived by the proviso in § 70, and the policies are exempt. *Steele* v. *Buel*, 104 Fed. Rep. 968; *Pulsifer* v. *Hussey*, 54 Atl. Rep. 1076; *Lockwood* v. *Exchange Bank*, 190 U. S. 294. *Re Scheld*, 104 Fed. Rep. 870; *Re Lange*, 91 Fed. Rep. 361, do not apply. Exemption statutes are to be liberally construed. *Packing Co.* v. *Jeff*, 11 Washington, 466; *Re Kane*, 127 Fed. Rep. 552.

The state law must, independently of other authority, control the decision in this case. *Re Wilson*, 123 Fed. Rep. 20. For definition of cash surrender value see *Pulsifer* v. *Hussey*, *supra*, and *Re Welling*, 113 Fed. Rep. 189.

Congress has no power to abrogate state exemptions. *Re Heilbron*, 14 Washington, 536; Cooley's Const. Lim. 29, 61; *Re Beckerford*, 1 Dillon, 45.

*Mr. Frederick Bausman* and *Mr. Hugh A. Garland* for respondent:

Supposing these not to be cash surrender policies they are property capable of passing to the trustee. Section 70a, bankrupt act; *Page* v. *Edmunds*, 187 U. S. 596; *Fuller* v. *N. Y. Fire Ins. Co.*, 184 Massachusetts, 12.

As to whether policies paid up like these, and yet not im-

mediately cash surrender policies, pass to the trustee, see *In re Slingluff*, 106 Fed. Rep. 154; *In re Welling*, 113 Fed. Rep. 189; *In re Diack*, 100 Fed. Rep. 770; *Ladd* v. *Union Insurance Company*, 116 Fed. Rep. 878; *In re Boardman*, 103 Fed. Rep. 783; *In re Martens*, 131 Fed. Rep. 972; *Gould* v. *N. Y. Life Ins. Co.*, 132 Fed. Rep. 927.

If the policies are of the cash surrender sort, § 70a, which would hold them for the trustee, does not give way to the state exemption clause. Compare *In re Welling*, 113 Fed. Rep. 189, with *In re Boardman*, 103 Fed. Rep. 783.

Supposing the estate exemption clause applicable, the Washington law does not mean that endowment policies are exempt to the insured debtor in his own lifetime, and that any kind of policy whatever is exempt from the creditors of a beneficiary also.

The law should receive a sensible construction. *Holy Trinity Church* v. *United States*, 143 U. S. 457; *United States* v. *Kirby*, 7 Wall. 482; *Heydenfeldt* v. *Mining Co.*, 93 U. S. 634; *Scott* v. *Deweese*, 181 U. S. 202, affirming 89 Fed. Rep. 843; *Lee Kan* v. *United States*, 62 Fed. Rep. 914; *Chinese Merchants' Case*, 13 Fed. Rep. 605; *Lau Ow Bew* v. *United States*, 144 U. S. 47.

Thirty-five States and Territories have passed laws exempting life insurance, of which twenty-four have exempted the insurance as a fund, not for the insured, but for the beneficiary.

When this Washington statute was passed, twenty-four of these thirty-five statutes did not intend that the insured should endow himself with life insurance for his own uses while living, and the same statutes, while making the insurance exempt to *the wife*, as against his creditors, made no such provision as that she might have creditors too and hold the proceeds free. These statutes are: Arkansas, Sandels and Hills Code, 1894. § 4944; Delaware, Code, 1893, ch. 76, § 3; Dist. of Col., Code, 1902, § 1162; Florida, Rev. Stat., 1892, § 2347; Hawaii, Civil Laws, 1897, § 1903; Illinois, 2 S. & C. Ann. Stat., 1896, p. 2259, ch. 73, § 189; Indian Territory, Stat., 1899, § 3023; Maryland, 1 Gen. Laws, §§ 5, 8, 9, p. 803; Michigan, Comp. Laws,

1897, § 8695; Mississippi, Ann. Code, 1892, § 1964; Missouri, Rev. Stat., 1899, § 7895, p. 1842; New Jersey, 2 Gen. Stat., 1896, p. 2019; New Mexico, Comp. Laws, 1897, § 2042; New York, Rev. Stat., 1 Code and Gen. Laws, 3d ed., Birdseye, p. 1046; Domestic Relations Law, Art. 3, § 22; Pennsylvania, 1 Pepper & Lewis Dig., 1896, § 91, col. 2383; Ohio, 2 Bates' Ann. Statutes, 2d ed. §§ 3628, 3629; Oklahoma, 1 Stat., 1903, p. 795; Rhode Island, Pub. Stat., ch. 166, § 21; South Dakota, Rev. Code Civil Pro., 1903, § 347, p. 929; South Carolina, 1 Code, 1902, § 1824; Tennessee, Ann. Code, 1 Grayson, 1895, § 2294; Vermont, Stat., 1894, § 2653; West Virginia, Code, 1887, ch. 66, § 456.

Of these States some further restricted the thing by making such exemption to the beneficiary only when a wife, others only to a small sum, a few hundred dollars, under any circumstances.

See in comparison the sweeping monstrosity possible under a liberal interpretation of the Washington law, "the proceeds or avails of all life insurance." To the insured while he lives if he wants to endow himself, to the insured bankrupt from others if they choose to endow him, no limit either, in any amount.

The other eleven States afford no precedent for this. Five of them: Connecticut, Rev. Stat., 1902, § 4548; Kentucky, Stat., 1894, § 654; Massachusetts, 2 Rev. Laws, 1902, ch. 118, § 73, p. 1154; New Hampshire, Pub. Statutes, 1901, ch. 171, § 1; Wisconsin, Stat., 1898, § 2347, exempt the policy in the wife's favor only against creditors of the husband, like the other States, or of the person paying the premium. North Carolina and Georgia, are too obscure to be made out upon this point at all. Alabama, 1 Code, 1896, § 2607; Iowa, Code, 1897, § 1805; Kansas, Gen. Stat., 1901, § 3463; Maine, Rev. Stat., 1903, ch. 49, § 106. In Maine the exemption amounts to only $150. And see *Smealey* v. *Felt*, 43 Iowa, 607; *Murray* v. *Wells*, 53 Iowa, 256.

As life insurance is a fund realizable by death and not by

any one during his lifetime, the term excludes endowment policies payable during life of insured. *Talcott* v. *Field*, 52 N. W. Rep. 400.

Mr. Justice White, after making the foregoing statement, delivered the opinion of the court.

The law of the State of Washington upon which the bankrupts relied to sustain the exemption of the policies was originally enacted in 1895 (Laws of Washington, 1895, p. 336), and was reënacted in 1897. Laws of 1897, p. 70. The original act provided "that the proceeds or avails of all life insurance shall be exempt from all liability for any debt;" and the amendment of 1897 enlarged this act by making it also applicable to accident insurance.

The Circuit Court of Appeals held that the policies were not exempt, even although embraced by the state exemption, because of the requirements of section 70 of the bankrupt act of 1898. This was sustained upon the theory that section 6 of the bankrupt act, adopting the exemption laws of the several States, was modified, as to life insurance policies, by a proviso found in section 70a. In addition, in this court it is insisted on behalf of the trustee that, even although the construction of the bankrupt act adopted by the Circuit Court of Appeals was a mistaken one, nevertheless the policies were not exempt, first, because the law of Washington making the exemption was in conflict with the constitution of that State; and, second, because the law, even if valid, did not authorize the exemption of policies of the character of those here involved.

As section 6 of the bankrupt act gives effect to the exemptions allowed by the state law, it follows that the contentions that there was no valid state law exempting insurance policies, or that the exemption here claimed is not embraced within the state law, if such law be valid, lie at the threshold of the case, and must be disposed of before we come to consider the true interpretation of the bankrupt law.

To decide the contentions involves purely state and not Federal considerations. No decision of the Supreme Court of the State of Washington holding the exemption law to be invalid because repugnant to the state constitution has been referred to. On the contrary, in *In re Heilbron's Estate,* 14 Washington, 536, the exemption law in question was considered and upheld by the Supreme Court of Washington. In that case the court maintained the contention that to cause the provisions of the statute to retrospectively apply to debts which had been contracted prior to the passage of the act would render the act unconstitutional, both from the point of view of the Federal as well as the state constitution, and therefore that the law must be construed as having only a prospective operation. All the reasoning, however, of the opinion of the court by which the conclusion referred to was reached assumed as a matter of course that the law, if operating prospectively, was not an unconstitutional exercise of power by the legislature. And it is also worthy of remark that the amendment including accident insurance was adopted by the legislature of Washington subsequent to the decision in *In re Heilbron's Estate.* Of course, as the question of the repugnancy of the statute to the constitution of Washington upon the grounds now asserted was not presented in that case, the decision cannot be said to be conclusive of the question. But it has its due persuasive force.

Considering the contention, however, as an original question, we think its unsoundness is quite clear. The fallacy which the proposition embodies consists in presupposing that because the constitution of the State of Washington provides that the legislature "shall protect by law from forced sale a certain portion of the homestead and other property of all heads of families," thereby a limitation was imposed upon the general power of the legislature to determine the amount and character of property which should be exempt. Two cases are referred to as supporting the contention. *In re How,* 59 Minnesota, 415; *Skinner* v. *Holt,* 9 S. Dak. 427. But those

cases were based upon constitutional provisions widely different from the one here relied upon. To the contrary, in California, where a constitutional provision obtains identical with the one we are considering (const. Cal. article XVII, sec. 1), it has been decided that the character and amount of property which shall be exempt from execution is "purely a question of legislative policy." *Spence* v. *Smith*, 121 California, 536. And it is further to be observed that the legislature of California has acted under that assumption, and has in effect exempted life insurance policies from execution. Thus it is provided in the Civil Code of California as follows:

"SEC. 3470. Property exempt.—Property exempt from execution and insurances upon the life of the assignor, do not pass to the assignee by a general assignment for the benefit of creditors, unless the instrument specially mentions them, and declares as intention that they should pass thereby. En. March 21, 1872."

Conceding the constitutionality of the statute, it is next insisted that it does not embrace an exemption of the avails of the policies in question. The arguments supporting this contention are somewhat involved, but are all embraced in the following propositions: First, life insurance, it is said, in its strictest and technical sense, relates only to a fund realizable by death, and therefore the words "all life insurance," in the Washington statute, must be given that restricted meaning, hence the statute is inapplicable to one of the policies which partakes of the nature of an endowment. Second, exemptions of life insurance policies, it is asserted, do not generally protect the avails of insurance from pursuit by creditors of the insured, where the proceeds of the policies are payable to his estate, nor do they protect the avails of insurance from pursuit by the creditors of the wife of the insured or other beneficiary. The application of these propositions is based upon the fact that in both of the policies the wife—one of the bankrupts— was named as a beneficiary in the event of surviving her hus-

band, and in one of the policies the husband was entitled, if he survived the twenty years' period, to surrender the policy and receive its cash value.

To support the propositions the law of many States, limiting the exemption of the proceeds of life insurance policies to the cases specified, are referred to, and the argument is that, because in such States there are such statutes, a similar limitation should be read by construction into the Washington statute. But the error in the argument is manifest. It is not to be doubted that the broad terms of the statute, as ordinarily understood, embraced both of the policies, and it would not be construction but legislation to restrict the meaning of the statute in accord with narrower legislation in other States, because in the judgment of a court it might be deemed equitable to do so. The wide departure from the legislation of many of the other States, shown by the unrestricted terms of the Washington statute, instead of manifesting the intention of the legislature of that State to narrow the exemption to conform to the statutes of other States, on the contrary conclusively shows the intention of the Washington legislature to adopt a broader and more comprehensive exemption. And light upon the intention to give a broad and popular meaning to the term life insurance is shown by the amendment exempting the avails of accident policies, which ordinarily, in the event death does not result, is payable to the insured. And it may also be observed in this connection that the policies considered by the Supreme Court of Washington in *In re Heilbron's Estate, supra*, were payable on the death of the insured to his executors, and no intimation was given in the opinion that policies of that character were not within the terms of the exempting statute.

The policies then being exempt by the state law, we are brought to consider the question whether they were exempt under the bankrupt act of 1898.

As we have said, section 6 of the act adopts, for the purposes of the bankruptcy proceedings, the exemptions allowed by the

laws of the several States. The language so providing is as follows:

"SEC. 6. Exemptions of Bankrupt.—a. This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the State wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition."

It is beyond controversy that if the section just quoted stood alone the policies in question would be exempt under the bankrupt act. The contention that they are not arises from what is assumed to be a limitation imposed upon the terms of section 6 by a proviso found in section 70a of the act. We quote that section in full, italicising the provision which it is deemed operates to take the proceeds or avails of policies of insurance out of the control of section 6:

"The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all (1) documents relating to his property; (2) interest in patents, patent rights, copyrights, and trade-marks; (3) powers which he might have exercised for his own benefit, but not those which he might have exercised for some other person; (4) property transferred by him in fraud of his creditors; (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him: *Provided, That when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold,*

*own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets;* and (6) rights of action arising upon contracts or from the unlawful taking or detention of, or injury to, his property."

Conflicting views as to the operation upon section 6 of the proviso in section 70a referred to have been expounded by the Circuit Courts of Appeal. Two of the leading cases are *Steele* v. *Buel,* 104 Fed. Rep. 968, holding that the proviso does not qualify the exemptions accorded by section 6, and the other decision by the Court of Appeals of the Ninth Circuit, in *In re Scheld,* 104 Fed. Rep. 870, holding that the effect of the proviso was to limit, as to policies of insurance, the broad terms of section 6, adopting the state exemption laws.

Considering the matter originally, it is we think apparent that section 6 is couched in unlimited terms, and is accompanied with no qualification whatever. Even a superficial analysis of section 70a demonstrates that that section deals not with exemptions, but solely with the nature and character of property, title to which passes to the trustee in bankruptcy. The opening clause of the section declares that the trustee after his appointment shall be vested "by operation of law with the title of the bankrupt, . . . except in so far as it is to property which is exempt," and this is followed by an enumeration under six headings, of the various classes of property which pass to the trustee. Clearly, the words "except in so far as it is to property which is exempt," make manifest that it was the intention to exclude from the enumeration property exempt by the act. This qualification necessarily controls all the enumerations, and, therefore, excludes exempt property from all the provisions contained in the respective enumerations. The meaning now sought to be given to the proviso cannot in reason be affixed to it without holding that the words "except in so far as it is to property

which is exempt," do not control and limit the proviso. But to say this is to read out of the section the dominant limitation which it contains, and, therefore, to segregate the proviso from its context and cause it to mean exactly the reverse of what, when read in connection with the context, it necessarily implies.

It is, however, argued that unless the proviso be given the import attributed to it, and be treated as not subject to the limitation implied by the words creating the exception as to exempt property, that it becomes meaningless, and hence, under the rule of construction which commands that effect must be given if possible to all parts of a statute, the proviso must be construed as wholly disconnected from the clause as to exempt property. The premise upon which this proposition rests is a mistaken one. As section 70a deals only with property which, not being exempt, passes to the trustee, the mission of the proviso was, in the interest of the perpetuation of policies of life insurance, to provide a rule by which, where such policies passed to the trustee because they were not exempt, if they had a surrender value their future operation could be preserved by vesting the bankrupt with the privilege of paying such surrender value, whereby the policy would be withdrawn out of the category of an asset of the estate. That is to say, the purpose of the proviso was to confer a benefit upon the insured bankrupt by limiting the character of the interest in a non-exempt life insurance policy which should pass to the trustee, and not to cause such a policy when exempt to become an asset of the estate. When the purpose of the proviso is thus ascertained it becomes apparent that to maintain the construction which the argument seeks to affix to the proviso, would cause it to produce a result diametrically opposed to its spirit and to the purpose it was intended to subserve.

And the meaning which we deduce from the text and context of the proviso is greatly fortified by obvious considerations of public policy. It has always been the policy of Con-

gress, both in general legislation and in bankrupt acts, to recognize and give effect to the state exemption laws. This was cogently pointed out by Circuit Judge Caldwell, in delivering the opinion in *Steele* v. *Buel,* where he said (104 Fed. Rep. 972):

"From the organization of the Federal courts under the judiciary act of 1789, the law has been that creditors suing in these courts could not subject to execution property of their debtor exempt to him by the law of the State. Judiciary act of 1789, 1 Stat. 93, c. 21; *Wayman* v. *Southard,* 10 Wheat. 1, 32, 6 L. ed. 253; *Lamaster* v. *Keeler,* 123 U. S. 376; *S. C.,* 8 Sup. Ct. 197, 31 L. ed. 238; *Dartmouth Sav. Bank* v. *Bates* (C. C.), 44 Fed. Rep. 546. . . . The same rule has obtained under the bankrupt acts, which have sometimes increased the exemptions, notably so under the act of 1867 (section 5045, Rev. Stat.) but have never lessened or diminished them. An intention on the part of Congress to violate or abolish this wise and uniform rule observed from the creation of our Federal system should be made to appear by clear and unmistakable language. It will not be presumed from a doubtful or ambiguous provision fairly susceptible of any other construction."

There has been some contrariety of opinion expressed by the lower Federal courts as to the exact meaning of the words cash surrender value as employed in the proviso, some courts holding that it means a surrender value expressly stipulated by the contract of insurance to be paid, and other courts holding that the words embrace policies, even though a stipulation in respect to surrender value is not contained therein, where the policy possesses a cash value which would be recognized and paid by the insurer on the surrender of the policy. It is to be observed that this latter construction harmonizes with the practice under the bankrupt act of 1867, *In re Newland,* 6 Ben. 342; *In re McKinney,* 15 Fed. Rep. 535, and tends to elucidate and carry out the purpose contemplated by the proviso as we have construed it. However, whatever influence

that construction may have, as the question is not necessarily here involved, we do not expressly decide it.

*The judgment of the Circuit Court of Appeals is reversed, and that of the District Court affirmed; cause remanded to the latter court.*

MR. JUSTICE MCKENNA took no part in the decision of this cause.