**In re James Edward MANICURE, Debtor.**

**In re Harold Loyd RINGLEY, Debtor.**

**Bankruptcy Nos. 7–81–01113, 7–81–01114.**

United States Bankruptcy Court,
W.D. Virginia,
Big Stone Gap Division.

April 15, 1983.

Tyler M. Moore, Douglas D. Wilson, Roanoke, Va., for debtors.

John E. Kieffer, James J. Burns, Bristol, Va., for creditor.

Robert E. Wick, Jr., Bristol, Va., trustee.

## MEMORANDUM OPINION

H. CLYDE PEARSON, Bankruptcy Judge.

This matter comes on upon the filing by CIT Corporation, a creditor, of objections to exemptions claimed by the respective Debtors, James Edward Manicure and Harold Loyd Ringley. After a joint hearing on the objections in the cases, the Court makes the following determination.

In October 1974, Manicure and Ringley formed a partnership under the name of Ringley and Mancuso Coal Producers. The partnership engaged in the coal operation business and operated several strip mines in the vicinity of Wise County, Virginia. The business experienced financial difficulties and in the fall of 1980, equipment companies began reclaiming their equipment from the partnership. Manicure and Ringley each filed voluntary Chapter 7 petitions in this Court on September 10, 1981. In their respective petitions, each Debtor claimed as exempt property his interest in a family residence located in Wise County, Virginia and a condominium unit in New Smyrna Beach, Florida. Pursuant to Title 38.1 of the *Code of Virginia,* each Debtor further claimed as exempt the loan or cash surrender value in certain life insurance policies which named family members as beneficiaries. CIT filed objections to these exemp-

tions in October of 1981. Several other creditors subsequently filed objections, but these were disallowed as not timely filed in accordance with the First Meeting of Creditors Notice and Local Bankruptcy Rule 4005.

## I. *Manicure's Virginia Residence*

The Debtor maintains his undivided interest in his Virginia residence is exempt under 11 U.S.C. § 522(b)(2)(B) as the property is held with his wife, Wanda Hall Manicure, by the entireties. CIT asserts that the property is *not* held by the entireties because it is not so specified in the deed.

In Virginia, when real property is conveyed to a husband and wife, the deed must specify that a tenancy by the entirety is intended or a tenancy in common results. *Va.Code* § 55–20 (1981 Repl.Vol.) The deed in question was introduced into evidence at trial; this deed is dated October 10, 1968 and was properly recorded in the Clerk's Office of the Circuit Court of Wise County, Virginia. The subject deed is between E.D. Vicars, Jr. *et al.* ("parties of the first part") and James E. Manicure and Wanda H. Manicure, his wife ("parties of the second part"). Title to the property was taken as follows: "Said parties of the first part . . . do hereby grant, bargain, sell and convey, with covenants of GENERAL WARRANTY of title unto the said parties of the second part, all those two (2) certain lots . . .". There is no language in the deed evidencing an intent to create a tenancy by the entirety. Although Manicure apparently believed that the property was held by the entireties, counsel for the Debtor concedes that this is not clearly stated by the language of the deed.

■ Alternatively, counsel for Manicure argues that the Debtor's interest in the Virginia residence is exempt because the equity in the home is traceable to proceeds derived from the sale of a previous residence which *was* held by the Debtor and his wife as tenants by the entireties. Counsel cites the case of *Oliver v. Givens,* 204 Va. 123, 129 S.E.2d 661 (1963) in support of its position, wherein the Virginia Supreme Court held that "proceeds derived from the voluntary sale of real estate held by the entireties are likewise held by the entireties." Counsel attempted to introduce the deed to the Manicures' prior residence held by the entireties, but the objection to the introduction was sustained by the Court. Had this deed been admitted and considered, the Court would nevertheless decline to accept the argument advanced. The holding in *Oliver* applies to sales proceeds which remained in cash form and were deposited into a bank account in the wife's name only, not to the portion of the sales funds used to purchase other property. Once funds of this nature are used to purchase real property, as in the instant case, they lose their character as "proceeds" which can be traced back to the tenancy by the entirety. Instead, we must look to the language of the deed to the real property purchased with these funds to determine the nature of the interest held by the parties. To hold otherwise would create chaos with the property and conveyancing laws of the state.

■ The Court concludes that the Virginia residence of James Manicure and his wife is not held by the entireties and the interest of the Debtor is, therefore, an asset of the bankruptcy estate to be administered by the Trustee as he may deem proper. The Trustee may choose to abandon said property as there appears to be little or no equity; such action by the Trustee would render this matter moot.

## II. *Ringley's Virginia Residence*

Harold Ringley and his wife, Alma Jean Ringley, purchased a home in Wise County, Virginia in 1963 as tenants in common. During the settlement of his mother-in-law's estate, Ringley was made aware of the problems involved with the transfer of realty held as tenants in common. For personal estate planning reasons, Ringley and his wife executed a deed converting their property to a tenancy by the entirety with the incumbent right of survivorship. This deed was properly recorded in the Clerk's Office of the Circuit Court of Wise

County, Virginia on April 18, 1980. In his bankruptcy petition, Ringley claimed his undivided interest in this property as exempt pursuant to 11 U.S.C. § 522(b)(2)(B).

Section 522(b)(2)(B) provides that an individual debtor may exempt from property of the estate such interest that the debtor had "immediately before the commencement of the case" to the extent that such interest is exempt from process under applicable non-bankruptcy law. Under Virginia law, property held by the entireties is immune from individual creditor attack. *Vasilion v. Vasilion,* 192 Va. 735, 66 S.E.2d 599 (1951). CIT Corporation is attempting to attack the exemption claimed by the Debtor by challenging the underlying transfer that created the tenancy by the entirety. CIT contends that this transfer may be avoided under state law as fraudulent and voluntary, and is therefore avoidable under 11 U.S.C. § 544(b).

▮ A challenge to the propriety of the transfer creating the tenancy by the entirety is a matter that the Trustee only can pursue under § 544(b). Unless the Trustee in this case institutes a proper adversary proceeding (pursuant to his duties under § 704) within 30 days from this date to recover an allegedly fraudulent or voluntary transfer for the benefit of the creditors, the entireties property claimed as exempt under § 522(b)(2)(B) will be so adjudged. [See also *Bass v. Thacker,* 5 B.R. 592 (Bkrtcy.W.D.Va.1980)]

### III. *Florida Condominiums Owned by Ringley and Manicure*

In the early summer of 1978, the Manicures and the Ringleys took options to purchase two separate condominium units located in Volusia County, Florida. The units were not completed until sometime in January 1979, at which time title to the properties was taken in the partnership name to minimize partnership taxes. Several months later it was determined that the amount of the monthly mortgage payments was creating a strain on the cash flow of the partnership. Consequently, the partnership deeded the units, one each, to the individual partners in April of 1979. Each partner subsequently transferred his unit to himself and his wife. The Manicure deed is dated June 19, 1979 and the Ringley deed is dated February 7, 1980; both deeds were properly recorded. Each Debtor claimed his undivided interest in his respective Florida condominium unit as exempt property under § 522(b)(2)(B).

▮ The Court must look to Florida law to determine whether the property as deeded to the Debtors and their wives is held by the entireties. *Florida Statute* § 689.11(1), as amended, provides in pertinent part:

(1) . . . an estate by the entirety may be created by the action of the spouse holding title:

(a) . . .

(b) conveying to both spouses.

There is no requirement under Florida law that any "magic words" or "words of art" be used to create entireties property. Absent the expression of any contrary intent, the deed to a man and woman described as husband and wife is sufficient to create an tenancy by the entirety. *In re Estate of Silvian,* 347 So.2d 632 (4th DCA Fla.1977). Further, as in Virginia, property held under Florida law as tenants by the entireties is exempt from process by individual creditors. *In re Lunger,* 5 C.B.C.2d 43, 8 B.C.D. 11, 14 B.R. 6 (Bkrtcy.M.D.Fla.1981).

There is no controversy that the language in the Florida deeds held by the Manicures and the Ringleys created entireties property. CIT objects to the exemption of the Florida condominiums for the reason that the transfers from Manicure and Ringley to themselves and their wives are avoidable under the Florida fraudulent and voluntary conveyance statutes and may therefore be avoided under 11 U.S.C. § 544(b).

The Trustee is the only party who can seek avoidance under § 544(b). Unless the Trustee in the instant cases institutes proper adversary proceedings within 30 days from this date to recover allegedly fraudulent or voluntary conveyances by the Debtors, the entireties properly claimed as ex-

empt pursuant to § 522(b)(2)(B) shall be so adjudged.

## IV. Life Insurance Policies of Ringley and Manicure

By stipulation entered into the record, it was established that the Debtors own the following life insurance policies:

| James Manicure Policies | Beneficiary | Cash Surrender Value |
|---|---|---|
| Metropolitan Life Insurance, level term, $150,000.00 | Estate of insured trust for family | $ 0.00 |
| Metropolitan Life Insurance, whole life, $50,000.00 | Wanda H. Manicure | $ 1,853.10 |

| Harold Ringley Policies | Beneficiary | Cash Surrender Value |
|---|---|---|
| Metropolitan Life Insurance, whole life, $50,000.00 | Alma C. Ringley | $ 516.18 |
| Aetna Life Insurance, whole life, $15,000.00 | Alma C. Ringley | $ 51.04 |
| Metropolitan Life Insurance, Endorsement at 65, $10,000.00 | Alma C. Ringley | $ 605.55 |
| Northwestern Mutual Life, whole life, $20,000.00 | Alma C. Ringley | $ 146.09 |

Pursuant to Va.Code §§ 38.1–448 and 38.-1–449, Ringley and Manicure maintain the cash surrender value of their life insurance policies is exempt property; both Debtors qualify as householders. CIT objects to the exemptions on two grounds: (1) the exemptions were not claimed in the Homestead Deeds filed by each Debtor in Wise County, Virginia; and (2) the amount of the exemption claimed by each Debtor exceeds the $10,000.00 face value limitation set out in § 38.1–449.

Enacted in 1946, the life insurance exemption provisions are poorly drafted and susceptible to a variety of interpretations.[1] The text of the two sections is set forth below:

§ 38.1–448. *Proceeds of policies payable to others free of claims against insured.* —If a policy of insurance, whether heretofore or hereafter issued, is effected by any person on his own life or on another life, in favor of a person other than himself, or, except in cases of transfer with intent to defraud creditors, if a policy of life insurance is assigned or in any way made payable to any such person, such lawful beneficiary or assignee thereof, other than the insured or the person so effecting such insurance or the executors or administrators of such insured or the person so effecting such insurance, shall be entitled to its proceeds and avails against the creditors and representatives of the insured and of the person effecting the same, whether or not the right to change the beneficiary is reserved or permitted, and whether or not the policy is made payable to the person whose life is insured if the beneficiary or assignee predeceases such person; provided, that, subject to the statute of limitations, the amount of any premiums for such insurance paid with intent to defraud creditors, or paid under such circumstances as to be void under § 55–81, with interest thereon, shall enure to the benefit of such creditors from the proceeds of the policy. § 38.1–449.—*Amount of such proceeds limited in certain cases.*—In the case of policies under the terms of which the right to change the beneficiary is reserved and as to which the cash surrender value or loan value thereof is claimed by such creditors, such insurance shall not be entitled to the protection afforded by § 38.1–448, except that in the case of householders or heads of families or their beneficiaries or their assignees the total amount of such insurance entitled to the protection afforded by § 38.1–448 shall not exceed ten thousand dollars and when the amount of such insurance represented by two or more policies exceeds such limit, the protection afforded by § 38.1–448 shall be allowed as to each of such policies pro rata in accordance with the respective annual premiums.

The current statute fails to make clear whether the insurance exemption is separate and independent from the $5000.00 homestead exemption. If, however, the life insurance exemption was meant merely as a part of the homestead exemption, there would be no need for it. [See Ulrich, *Virginia's Exemption Statutes—The Need For*

---

1. Note, *The Failure of the Virginia Exemption*    *Plan,* 21 W. & M.L.Rev. 851, 862 (1980).

*Reform and A Proposed Revision,* 37 Wash. & Lee L.Rev. 127 (1980) ] In Virginia, as in most other states, a policy of life insurance owned by a third party is not subject to claims of the insured's creditors. (*Va.Code* § 38.1–448, codifying the rule at common law). In the absence of an exemption statute, where the insured retains the right to change the beneficiary, the creditors may reach the cash surrender value of the policy. *Smith v. Coleman,* 184 Va. 259, 35 S.E.2d 107 (1945). See also Riesenfeld, *Life Insurance and the Creditors' Remedies in the United States,* 4 U.C.L.A.L.Rev. 583 (1957). The exemption statute changes this rule with regard to householders, setting apart $10,000.00. Yet, if the debtor had claimed the insurance policy under the homestead exemption before the passage of *Va.Code* §§ 38.1–448 and 449, such policy would have been exempt just like any other species of property. Therefore, unless the two sections are merely surplusage, the legislature must have intended to create an independent exemption. It necessarily follows that if the exemption is independent from the homestead exemption, it need not be claimed in a homestead deed.

Proper construction of the Virginia insurance exemption statute is made difficult as there have been no cases construing the sections and the law review articles which have been written conflict in their interpretation. With regard to § 38.1–448, the consensus seems to be that the section declares that the beneficiary of an insurance policy is entitled to the full "proceeds and avails" as against the creditors of the insured. "Proceeds and avails" have been determined to include benefits payable while the insured is still living, such as cash surrender value and other values built up during the life of the policy, as well as the death benefits. *In re White,* 185 F.Supp. 609 (1960) and cases cited within; *Home Security Life Ins. Co. v. McDonald,* 277 N.C. 275, 177 S.E.2d 291 (1970); *Schwartz v. Seldon,* 153 F.2d 334 (2d Cir.1945). The protection afforded the beneficiary under this section is unlimited; creditors of the insured cannot reach *any* of the proceeds and avails, regardless of the amount.

Section 38.1–449 limits the reach of § 38.1–448 and is more difficult to interpret. The latter section declares that if the right to change the beneficiary is reserved to the policyholder and the creditors of the insured attempt to reach the cash surrender or loan value of the policy, the protection afforded the beneficiary under § 38.1–448 is not applicable. Creditors may reach the full amount of the cash surrender value, thereby forcing the insured debtor to terminate the policy or pay an equivalent amount to his creditors. If, however, the insured debtor is a householder, an individual favored in the exemption laws of Virginia, the total amount of the insurance entitled to the protection of § 38.1–448 is limited to $10,000.00. It is not clear whether this limitation applies to the face value of cash surrender value of the policy.

When analyzing the exemption statute, authors of the older law review articles proceed from the premise that the $10,000.00 limitation in § 38.1–449 applies to the face value of the insurance policy, although they do not articulate their reasons for doing so. [See Faris, *Exemption of Insurance and Other Property in the Virginias and Carolinas,* 17 Wash. & Lee L.Rev. 19 (1960); also Worthington, *Exemption of the Debtor's Life Insurance in Virginia,* 42 Va.L.Rev. 239 (1956) ]. Under their interpretation, the cash surrender values of policies with face values of up to $10,000.00 are exempt, but if the face value is in excess of this amount, then only the cash surrender value attributable to $10,000.00 of the face value is exempt. The remainder would be available for creditors of the insured. Although this interpretation is reasonable, it is not entirely faithful to the language of the statute. Difficulties arise because neither § 38.1–448 nor § 38.1–449 refer to the "face value" of the policy. Further, because cash surrender value is largely a function of the age of the policy (the older the policy, the greater the surrender value), in one instance the exemption may be zero and in another many thousands of dollars. Why the legislature would provide for such an amorphous exemption is not clear.

This Court is of the opinion that the proper construction should be that the $10,000.00 limitation applies not to the face value of the policy, rather to the cash surrender or loan value. [See Note, *The Failure of the Virginia Exemption Plan,* 21 W. & M.L.Rev. 851 (1980)]. Under this interpretation, the insured debtor's life insurance policies are fully protected as long as their cash surrender value does not exceed $10,000.00. Creditors of the insured may reach such policies only to the extent that cash surrender or loan value exceed $10,000.00. To hold otherwise would defeat the prominent policy underlying the exemption laws, the protection of the family and dependents of the debtor who are the usual beneficiaries. For example, if a presently uninsurable debtor owns a life insurance policy with a face value of $100,000.00 and no cash surrender value, his creditors may not reach the policy. On the other hand, if a presently uninsurable debtor owns a policy with a face value of $100,000.00 and a cash surrender value of $1000.00, his creditors could reach $900.00 of the cash value if the limitation in § 38.1–449 is read to apply to face value. This would force the debtor to terminate the policy if he is unable to pay the equivalent value to his creditors, thereby robbing his beneficiaries of present or future protection.[2]

As noted earlier, § 38.1–448 does not refer to face value; neither does it refer to rights which arise upon the death of the insured. Instead, it refers only to "proceeds and avails" and this term encompasses living benefits such as cash surrender value. Hence the argument that the reference in § 38.1–449 to § 38.1–448 implies that the limitation refers to face value stems from a misinterpretation of § 38.1–448 and is not persuasive. The more generous interpretation of § 38.1–449 is entirely consistent with the liberal exemption provided by § 38.1–448, under which the "proceeds and avails" available to the beneficiary are unlimited, and also with the general rule of law which calls for the liberal construction of exemption statutes. *Holden*

*v. Stratton,* 198 U.S. 202, 25 S.Ct. 656, 49 L.Ed. 1018 (1905); 31 *Am.Jur.2d,* Exemptions § 8.

In summary, the Court concludes that the Debtors are entitled to exempt the cash surrender value of their life insurance policies which does not exceed the sum of $10,000.00. Such exemptions are properly claimed by listing the same in the bankruptcy schedules.

An appropriate Order will issue.

---

2. Query: Why would the legislature require forfeiture of a policy exceeding $10,000.00 in face value of a now uninsurable debtor to the total prejudice of his family and beneficiaries?