In re Sonya W. BUTCHER, Debtor.

Bankruptcy No. 3–83–01422.

United States Bankruptcy Court,
E.D. Tennessee.

March 13, 1987.

McMackin, Garfinkle & McLemore, Edwin M. Walker, Nashville, Tenn., for John C. McLemore, Trustee.

Claiborne, Davis, Buuck & Hurley, David L. Buuck, Knoxville, Tenn., for Sonya W. Butcher.

RICHARD STAIR, Jr., Bankruptcy Judge.

At issue is whether the trustee may remove the debtor and substitute the debtor's estate as the beneficiary of a life insurance policy owned by the debtor. The trustee contends the right to change the beneficiary is a contract right emanating from the debtor's ownership of the policy which is property of the estate. 11 U.S.C.A. § 541 (West 1979 & Supp.1986). Contending the trustee's interest is limited to the right to receive the cash value of the policy as of the petition date, the debtor maintains only her interest as owner of the policy—not her interest as beneficiary—is property of the estate. Alternatively, the debtor asserts public policy prohibits the trustee from being both the owner and beneficiary of the policy because he does not have an insurable interest in the life of the insured, her husband.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A) and (O). (West Supp.1986).

I

An involuntary bankruptcy petition was filed against Sonya Butcher, the debtor, on September 9, 1983. She consented to the entry of an order for relief under Chapter 7 on March 28, 1984.[1]

When the involuntary petition was filed the debtor owned a convertible life policy (No. 5 533 830), issued by Massachusetts Mutual Life Insurance Company (Mass. Mutual), insuring the life of her husband, Jacob F. Butcher, for the amount of $1,000,000.00.[2] The policy, issued on May

1. On April 12, 1984, the debtor converted her Chapter 7 case to Chapter 11. Upon motion of the Federal Deposit Insurance Corporation (FDIC), the case was subsequently converted back to Chapter 7.

2. On May 2, 1986, this court sustained the trustee's objection to the debtor's exemption claim to the surrender value of this policy. *In re Butcher,* 62 B.R. 162, 168–69 (Bankr.E.D.Tenn.1986). The debtor's appeal of the order denying her exemption claim is presently pending in the United States District Court for the Eastern Dis-

28, 1976, names the debtor as the primary beneficiary and the children of her marriage to Jacob F. Butcher as secondary beneficiaries. Premium payments in the amount of $6,617.52 are due quarterly. During the pendency of the debtor's case no party has made an out-of-pocket premium payment. Instead, the cash value of the policy, increased by credits for regular dividends, has been invaded to satisfy premiums as they become due.[3]

The "General Provisions" section of the policy recites in part:

RIGHTS OF OWNER During the lifetime of the insured and with the written consent of any irrevocable beneficiary (except as otherwise specifically provided herein) the owner may exercise and enjoy every right, privilege, option and benefit granted by this policy or allowed by the Company and may change the succession of ownership from time to time. An "irrevocable beneficiary" is any beneficiary whose consent is required by the terms of this policy to change the beneficiary designation hereunder.

The rights of the owner are subject to any written assignment received at the Home Office.

CHANGE OF OWNER OR BENEFICIARY During the lifetime of the insured, the owner or beneficiary may be changed from time to time. Any request for change of the owner or the beneficiary must be written and satisfactory to the Company. No change of the owner or the beneficiary will take effect unless such request is received at the Home Office. When such request is received, the change will relate back to and take effect as of the date the request was signed, whether or not the insured is living when the request for change is received; provided, however, that such change will be subject to any payment made or other action taken by the Company before the request is received.

The policy further provides that it "may be surrendered for its cash surrender value which shall be equal to the value of this policy plus the value of any paid-up additions and any dividend accumulations and less any indebtedness."

Due to the debtor's opposition, Mass. Mutual declined the trustee's request to change the policy beneficiary. Accordingly, on November 14, 1986, the trustee filed an "Application For Order Permitting Change Of Beneficiary." [4]

### II

Section 541 of Title 11 of the United States Code provides in part:

*Property of the estate.*

(a) The commencement of a case under section 301, 302 or 303 of this title cre-

---

trict of Tennessee. No stay of the order pending the debtor's appeal was requested.

Additionally, the Mass. Mutual policy is the subject of an adversary proceeding, *Federal Deposit Ins. Corp. v. Butcher (In re Butcher)*, Ch. 7 Case No. 3-83-01422, Adv. No. 3-86-0136 (Bankr.E.D.Tenn. filed Aug. 18, 1986). In its complaint, FDIC contends that by virtue of an assignment executed by the debtor on April 29, 1976, the cash surrender value of the Mass. Mutual policy secures a loan for premiums paid on behalf of the debtor by the former United American Bank in Knoxville. Alternatively, FDIC asserts that by virtue of the assignment it is the owner of the policy and thus entitled to the cash surrender value. The assignment provides in material part:

It is expressly agreed that the following specific rights, so long as the Policy has not been surrendered, are reserved and excluded from this assignment and do not pass by virtue hereof:

.    .    .    .    .

2. The right to designate and change the beneficiary;

. . . .

At a hearing on the trustee's application on January 8, 1987, Joseph G. Murray, Staff Attorney for FDIC, stated that FDIC does not resist nor contest the trustee's efforts to change the beneficiary of the Mass. Mutual policy.

3. The "Table Of Guaranteed Benefits For Basic Policy" reflects that as of May 26, 1983, less than four months prior to the filing date of the involuntary petition, the cash surrender and loan value of the policy was $125,490.00. This value does not take into account adjustments for any outstanding loan against the policy or the prepetition payment of premiums, if any, from the cash surrender value.

4. The trustee agrees to hold the proceeds of the policy, if any, in a separate account pending resolution of the debtor's appeal of this court's denial of her exemption claim.

ates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) [inapplicable herein as to (c)(2) ] of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

. . . . .

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

. . . . .

(C) as a beneficiary of a life insurance policy or of a death benefit plan.

. . . .

(b) Property of the estate does not include—

(1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor;

. . . .

11 U.S.C.A. § 541(a) and (b) (West 1979 & Supp.1986).

The legislative history clearly reflects the congressional intent respecting the scope of § 541(a)(1):

The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property currently specified in section 70a of the Bankruptcy Act. . . .

H.R.Rep. No. 595, 95th Cong., 1st Sess. 367, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 5963, 6323.

When Congress enacted The Bankruptcy Reform Act of 1978, Section 70(a) of the Bankruptcy Act of 1898 recited in part:

*Title to property*

(a) The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition ... except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located ... (3) powers which he might have exercised for his own benefit, but not those which he might have exercised solely for some other person; ... (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered: ... *And provided further,* That when any bankrupt, who is a natural person, shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained ... pay or secure to the trustee the sum so ascertained ... and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, *otherwise the policy shall pass to the trustee as assets. . . .*

11 U.S.C.A. § 110(a) (West 1953) *repealed by* The Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549 (emphasis added).

More than eighty years ago, the Supreme Court discussed the beneficent purpose of the proviso of Section 70(a)(5) permitting a debtor to retain insurance coverage:

As § 70a deals only with property which, not being exempt, passes to the trustee, the mission of the proviso was, in the interest of the perpetuation of policies of life insurance, to provide a rule by which, where such policies passed to the trustee because they were not exempt, if they had a surrender value their future operation could be preserved by vesting the bankrupt with the privilege of paying such surrender value, whereby the policy would be withdrawn out of the category as an asset of the estate. That is to say, *the purpose of*

*the proviso was to confer a benefit upon the insured bankrupt by limiting the character of the interest in a nonexempt life insurance policy which should pass to the trustee, and not to cause such a policy when exempt to become an asset of the estate....*

*Holden v. Stratton,* 198 U.S. 202, 213, 25 S.Ct. 656, 659, 49 L.Ed. 1018 (1905) (emphasis added).

In 1913, the Court amplified its analysis of the congressional purpose in enacting the Section 70(a)(5) insurance proviso:

> Congress intended ... that when [the cash surrender value] ... was realized to the estate, the bankrupt should be permitted to retain the insurance which, because of advancing years or declining health, it might be impossible for him to replace..... We think it was the purpose of Congress to pass to the trustee that sum which was available to the bankrupt at the time of bankruptcy as a cash asset; otherwise to leave to the insured the benefit of his life insurance.

*Burlingham v. Crouse,* 228 U.S. 459, 473, 33 S.Ct. 564, 568, 57 L.Ed. 920 (1913).

Although the debtor concedes her interest as owner of the policy is property of the estate, she nonetheless contends the trustee's interest is limited to the cash surrender value. The debtor contends she should be permitted to retain her rights as beneficiary of the policy, noting that the insured (her husband) is at an age where it will be virtually impossible to replace the Mass. Mutual policy with a policy providing similar benefits.

The insurance proviso of Section 70(a)(5) of the former Bankruptcy Act is not found in § 541(a). Assuming arguendo the policy permitting a debtor to retain an otherwise nonexempt life insurance policy is perpetuated under the current Bankruptcy Code, what rights in the policy could the debtor possibly retain without paying, or securing payment of, the cash surrender value? Section 70(a)(5) required payment of the cash surrender value as a condition of re-

tention of the policy. The debtor has not offered to pay the cash surrender value to the trustee.[5]

In *Cohen v. Samuels,* 245 U.S. 50, 38 S.Ct. 36, 62 L.Ed. 143 (1917), the bankrupt owned three life insurance policies insuring his own life and having cash surrender value. The beneficiaries of the policies were relatives of the bankrupt. Each policy reserved to the bankrupt the absolute right to change the beneficiary. The Court concluded that the trustee was entitled to the policies or their cash surrender value. Discussing Section 70(a)(3), the Court noted:

> The declaration of subdivision 3 is that "powers which he might have exercised for his own benefit" "shall in turn be vested in the trustee," and there is vested in him as well all property that the bankrupt could transfer or which by judicial process could be subjected to his debts, and especially as to insurance policies which have a cash surrender value payable to himself, his estate or personal representative.

*Cohen v. Samuels,* 245 U.S. at 53, 38 S.Ct. at 37.

Section 541(b), like Section 70(a)(3), excludes from property of the estate "any power that the debtor may exercise solely for the benefit of an entity other than the debtor." Conversely, any power the debtor may exercise for his own benefit is property of the estate.

In comparing the treatment of life insurance policies under the Bankruptcy Act of 1898 and the current Bankruptcy Code, a leading treatise recites:

> Under the Act, life insurance policies which gave the insured the absolute right to change the beneficiary, and to surrender them and collect the surrender value, passed to the trustee of the bankrupt insured as assets of the estate to the extent of such surrender value, if any, providing the policies were not wholly exempt under state law. This was upheld on the basis of Section 70a(3),

---

**5.** The trustee represents that his interest is in securing the cash surrender value of the policy and that, subject to that condition, he is pre-

pared to permit the debtor to convert the policy to continue coverage insuring her husband's life.

usually in conjunction with Section 70a(5). It was pointed out that the insured's power to change the beneficiary, reserved in the policy, "might have been exercised for his own benefit" and was therefore within Section 70a(3). Thus a policy having a cash surrender value, which if not payable to the bankrupt could be made so payable to him at will by a simple declaration changing the beneficiary, was regarded as an asset to which the trustee was entitled. The fact that this privilege or power was deemed personal to the insured was declared immaterial with respect to such policies in view of the provisions of clause (3). The same reasoning should apply under section 541(b)(1) of the Code. Because such a power is not one which may be exercised by the debtor "solely for the benefit of an entity other than the debtor" it does not fit within the definition of property to be excluded from the estate pursuant to section 541(b)(1). *Accordingly such a power will constitute property of the estate under section 541(a)(1).*

4 *Collier On Bankruptcy,* ¶ 541.21 (15th ed. 1986) (emphasis added and footnotes omitted).

■ Clearly, under the broad definition of property of the estate set forth in § 541(a)(1), the Mass. Mutual policy is an asset of the debtor's estate. *McCulloch v. Williams (In re McCulloch & Son, Inc.),* 30 B.R. 7, 8 (Bankr.D.Ore.1983). The estate, not the debtor, is paying the policy premiums. It is equally clear that the trustee is vested with all rights and "powers" exercisable by the debtor under the terms of the policy prior to the filing of the involuntary petition on September 9, 1983. One of these rights is the power to change the beneficiary. This court finds no statutory basis nor historical precedence for concluding that this power is in any way limited other than by the terms of the policy. The debtor simply has no right to remain as the beneficiary of a policy she no longer owns where the new owner desires to change the beneficiary.

## III

■ The court also disagrees with the debtor's alternative contention—that the trustee cannot designate the estate as beneficiary because the estate lacks an insurable interest in the life of the insured. Although an insurable interest is necessary where a would-be-beneficiary applies to insure someone else's life, public policy does not prohibit a good faith assignment or transfer of a life insurance policy previously issued to one without an insurable interest. *See Clement v. New York Life Ins. Co.,* 101 Tenn. 22, 36, 46 S.W. 561, 564 (1898). Indeed, the United States Supreme Court has recognized the legitimacy of the transfer of a life insurance policy in the bankruptcy context:

> On the other hand, life insurance has become in our days one of the best recognized forms of investment and self-compelled saving. So far as reasonable safety permits, it is desirable to give to life policies the ordinary characteristics of property. This is recognized by the bankruptcy law, § 70, which provides that unless the cash surrender value of a policy like the one before us is secured to the trustee ... the policy shall pass to the trustee as assets. Of course the trustee may have no interest in the bankrupt's life.

*Grigsby v. Russell,* 222 U.S. 149, 156, 32 S.Ct. 58, 59, 56 L.Ed. 133 (1911) (footnote omitted).

The trustee's application for an order permitting him to change the beneficiary of Mass. Mutual policy No. 5 533 830 will be granted.